**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Correctional Medical Care, Inc., et al.,** : | |
| **Plaintiffs** : | |
| **v.** : | **C.A. No. NO. 2:07-CV-02840-WY** |
| **J. Douglas Gray, et al.,** : | |
| **Defendants.** : | |

## ORDER

AND NOW, this ____ day of January 2008, upon consideration of Defendants Douglas Gray's, James Miller's and Investigative Services Agency, Inc.'s Motion to Quash Subpoenas (Doc. 23), and Plaintiffs' Response thereto, it is hereby ORDERED and DECREED that Defendants' Motion to Quash is DENIED.

It is further ORDERED that Defendants Douglas Gray, James Miller and Investigative Services Agency, Inc. shall fully respond to Plaintiffs' discovery requests within ten (10) days.

It is further ORDERED that American Express Travel Service; Chase/ JP Morgan Chase Visa; Visa Inc.; Sato Travel; and Southwest Airlines shall promptly produce all documents responsive to the subpoenas served upon them.

It is further ORDERED that Sprint PCS/Nextel; T-Mobile; US Cellular; and Verizon Wireless shall promptly produce all documents responsive to the subpoenas served upon them, including but not limited to all mobile, wireless or cellular site location information.

_____
Yohn, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Correctional Medical Care, Inc., et al.,** : | |
| **Plaintiffs** : | |
| **v.** : | **C.A. No. NO. 2:07-CV-02840-WY** |
| **J. Douglas Gray, et al.,** : | |
| **Defendants.** : | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO QUASH SUBPOENAS

Plaintiffs Correctional Medical Care, Inc. ("CMC"), Emre Umar and Maria Umar, hereby respond to the Motion to Quash filed by Defendants Douglas Gray, James Miller and Investigative Services Agency, Inc. (Doc.23).

## I.   INTRODUCTION

In response to a subpoena that Defendants seek to quash, Southwest Airlines confirmed that Defendants James Miller flew from Philadelphia to Chicago **on June 20, 2007**.  *See* Exhibit "A" for the Declaration of Timothy T. Myers, Esq.  The next morning, on **June 21, 2007**, Defendant James Miller brazenly lied to the Whitpain Township Police when he "also stated that he has never been to Pennsylvania nor hired anyone in Pennsylvania to follow the UMER's." *See* Exhibit "B" for a copy of the June 21, 2007 Police Report. [1]

Not only did he fly from Philadelphia just hours before he blatantly lied to the police, but his flight was also just two days after he broke into Plaintiff's home on **June 18, 2007** to retrieve the radio frequency listening and re-broadcasting device that he either personally planted, or had caused to be planted in Plaintiff's home.  Thus, the Subpoena to Southwest Airlines will produce evidence, at a minimum, that (1) Defendant Miller lied to the police and (2) he was in the

---

[1] This Police Report directly contradicts Defendants Douglas Gray's and Miller's counsels' representations to this Court at the October 4, 2007 Pre-Trial Conference that Defendant Gray did not hire Defendant Miller and that Plaintiffs will not "find" any such evidence.

Philadelphia area when at least the final break-in occurred.  The subpoenas to cellular telephone providers may well show precisely where he was, and when he was there, and who he was talking to when he was there.

The subpoenas that Defendants seek to quash will also provide evidence concerning the merits of Plaintiffs' claims, including dates and times of conversations with Co-Defendants and co-conspirators; purchases of equipment used to commit the crimes and misconduct; rental vehicles; payments to co-conspiratorial subcontractors; and other evidence corroborating Defendants' misconduct.  They will also provide evidence of prior relationships between the Defendants, and their pattern and practice of engaging in substantially similar misconduct.

On January 2, 2008, Defendants' counsel sent a letter to all of the recipients of subpoenas, including Southwest Airlines, advising them that they objected to the production of any records and requesting them not to produce the records.  Therefore, Plaintiffs have not yet received any documents responsive to the subpoenas, including the actual Southwest Airlines records proving that Defendant Miller flew from Philadelphia on June 20, 2008.

On January 9, 2007, counsel for Plaintiffs received a fax from a custodian of records at Verizon Wireless.  Verizon Wireless thereafter informed Plaintiffs that Verizon Wireless has four (4) active cellular telephone accounts for Defendant James Miller; it does not have an active account for Defendant Douglas Gray, but it is still checking to see if a prior account meets the 2007 time specification of the Subpoenas; and that it does not have any telephone records for Defendant Karen Z. Gray.  *See* Exhibit "A" for the Declaration of Timothy T. Myers, Esq.

**Verizon Wireless also informed Plaintiffs that it only maintains its cellular site location information for a period of twelve (12) months before the information is purged.** Additionally, although it will not release any information until Defendants' Motion to Quash is

resolved, it will not release this specific cellular site location information without a court order specifying that such information must be produced.  Thus, in order to obtain the records showing the location of Defendant James Miller during the time of the break-ins in May and June 2007, and even prior to that time from March 1, 2007, when Defendants' misconduct began, this court must issue the order sufficiently in advance of March 1, 2008 to allow Verizon Wireless, and any other telephone providers, to obtain the records **before they are purged.   Accordingly, Plaintiffs respectfully request expedited consideration of this Motion.**

Additionally, Plaintiffs are concerned that Defendants Douglas Gray, James Miller and Investigative Services Agency, Inc. will destroy and/or already have destroyed documents.  They have already lied to the police about committing criminal acts.  They are desperate people, who have committed serious crimes.  In response to this Court's questions at the pre-trial conference, concerning why Defendant Douglas Gray hired Defendants James Miller and Investigative Services Agency, Inc., their counsel provided different answers.   The last answer was that Plaintiffs will not be able to "find" any evidence of a payment from Defendant Douglas Gray to Defendants James Miller and Investigative Services Agency, Inc.  Accordingly, Plaintiffs are required to immediately conduct third-party discovery to preserve evidence.

Defendants also falsely state at ¶4 of their Motion that at the Pre-Trial Conference Plaintiffs orally moved for leave to conduct discovery and that the Court denied such a request.  At ¶7, Defendants falsely state that "the Court very clearly denied their request to issue discovery…"

To the contrary, Plaintiffs never sought leave of court to conduct discovery and would never do so because the Federal Rules of Civil Procedure "very clearly" provide for discovery, and there is no requirement to obtain leave of court.  The Court never denied any such request,

which was never made.  The issue never even came up at the Pre-Trial Conference.

Similarly, Defendants falsely state at ¶9 that the subpoenas are not limited in their time period, when paragraph 4 of the instructions to the subpoenas "very clearly" shows a limited time period.

The Federal Rules of Civil Procedure provide for discovery, including the issuance of discovery requests to parties and subpoenas to non-parties.  Leave of court is not required.  Leave of Court is only required to *stay* discovery.  Indeed, ***Defendants*** never sought any stay of discovery, and never filed any motion with the Court seeking a protective order or a stay of discovery until now.  Defendants' Motion must be denied pursuant to the Federal Rules of Civil Procedure.

## II.    STATEMENT OF THE FACTS

Defendant Douglas Gray and Plaintiff Maria Umar had a personal relationship for seven (7) years from in or around 2000 until March 1, 2007, based upon Defendant Douglas Gray's misrepresentations that he was estranged from his wife, Defendant Karen Gray.  (Complaint, ¶¶9-10.)  Defendant Douglas Gray used his prominent and highly visible business and elite social status to gain a sense of trust, confidence and induce Plaintiff Maria Umar.  (Complaint, ¶¶11-13.)

On March 1, 2007, Defendant Douglas Gray received a telephone call from his wife, Defendant Karen Gray, while he was in the presence of Plaintiff Maria Umar that disclosed to Plaintiff Maria Umar that he had not been truthful with her and that he was not estranged from his wife.  She promptly returned to Pennsylvania.  (Complaint, ¶¶ 14-16.)

That night, Defendant Karen Gray started calling and harassing Plaintiff Maria Umar, angrily telling her that Defendant Douglas Gray had many female friends, including call girls

and escort services.  Defendant Douglas Gray then called Plaintiff Maria Umar, and told her that he had contrived a ruse to cover up his relationship with her from his wife, Defendant Karen Gray, convincing her that Plaintiffs were dangerous, and could pose a threat to them.  He begged Plaintiff Maria Umar to go along with this ruse.  (Complaint, ¶¶ 17-32.)

In furtherance of Defendant Douglas Gray's ruse, on March 4, 2007, Defendants Douglas Gray and Karen Gray called Plaintiff Maria Umar, and continued their harassing misconduct.  (Complaint, ¶ 21.)  Three days later, Defendant Douglas Gray called Plaintiff Maria Umar again, this time telling her that his wife had found out about Plaintiffs' business.  Obviously, he intended this to intimidate and threaten Plaintiffs to go along with his ruse, through jeopardizing their business.  He also left messages telling her that he and his wife were undergoing counseling, but that his wife was very agitated, there was no telling what she may do, and that she was threatening to contact Plaintiff Emre Umar in retaliation.  He continued to represent to Plaintiff Maria Umar that he had told his wife, Defendant Karen Gray, not to call the Umars because they were "dangerous" and "volatile," as a ruse to scare her into not contacting Plaintiffs.  He also repeatedly attempted to get Plaintiff Maria Umar to leave voice messages on his cell phone.  This was all part of Defendant Douglas Gray's set-up to induce Plaintiff Maria Umar into appearing to consent to his ruse.  (Complaint, ¶¶ 23-27.)

On April 12, 2007, as part of his scheme, Defendant Douglas Gray again called Plaintiff Maria Umar, purportedly to "forewarn" her that he and his wife were going to call her yet again, to further harass her.  He also told her that, as a result and/or in furtherance of his ruse to scare his wife away from Plaintiffs, Defendant Karen Gray and/or he were considering hiring a private investigator to conduct a background check of Plaintiffs.  (Complaint, ¶¶ 28-31.)

On or about May 19, 2007, Defendant Douglas Gray called Plaintiff Maria Umar falsely

purporting to express his concern for her safety, and insinuating that she should feel endangered by her husband, Plaintiff Emre Umar.  Unbeknownst to Plaintiffs, at this point Defendants already had them under surveillance.  Moreover, Defendants knew that Plaintiff Emre Umar was not a threat to any one.  Again, this was all part of Defendant Douglas Gray's set-up to try to induce Plaintiff Maria Umar into appearing to consent to his ruse.  (Complaint, ¶¶ 32-34.)

Defendants Douglas Gray, James Miller and Investigative Services Agency told Plaintiff Maria Umar that Defendant Karen Gray had hired Defendants Miller and Investigative Services Agency to conduct a background check on Plaintiff Emre Umar.  Defendant Miller demanded that Plaintiff Maria Umar continue to go along with Defendant Douglas Gray's ruse, and to cooperate with this background check.  He stated that he and Defendants were already performing a background check on Plaintiff Emre Umar and that if she did not cooperate, they would get the information anyway.  Defendants concealed that they were conducting surveillance on Plaintiffs.  (Complaint, ¶¶ 35-37.)

Significantly, Defendant Miller lied to Plaintiff Maria Umar because Defendants had not only already performed a background check on Plaintiffs, but they were also secretly conducting surveillance, including eavesdropping through surreptitious electronic devices, and rebroadcasting them to a remote location.  Indeed, Plaintiffs believe that Defendants have conducted investigations and surveillance on other personal and business targets based on Defendant Douglas Gray's misrepresentations and misconduct.  (Complaint, ¶¶ 40-41.)

On **May 25, 2007**, a break-in at the home of Plaintiffs Emre and Maria Umar, which is located in a private gated community.  This is when Plaintiffs believe and allege that Defendants broke into and entered the home of Plaintiffs Maria and Emre Umar, and illegally planted a surreptitious electronic listening devices to intercept and rebroadcast the confidential, personal

and business communications of Plaintiffs. (Complaint, ¶¶ 42-43.) However, at the time, Plaintiffs did not know, and could not know, that Defendants were committing such illegal and outrageous misconduct.

On or about May 29, 2007, Plaintiff Maria Umar realized that Defendants somehow knew about details about what was occurring within the privacy of Plaintiffs' home and/or business, and she confronted Defendants on June 4, 2007. Defendant James Miller and Investigative Services Agency, Inc. brazenly admitted that they had her and her family under 24 hour surveillance. Defendant Miller misrepresented that Defendants Douglas and Karen Gray had hired him and Defendant Investigative Services Agency, Inc. because they had purportedly misrepresented that Plaintiff Emre Umar had threatened Defendant Douglas Gray. (Complaint, ¶¶ 44-47.) All of this was a lie.

When Plaintiff Maria Umar refused to be coerced into another charade contrived by Defendants, Defendant Miller threatened to interfere with Plaintiffs' business and contracts, if she did not surrender to Defendants' demands. She immediately told him again that Defendants' accusations were false, as she had previously advised Defendant Douglas Gray. She reiterated her demand that Defendants immediately cease their background check and surveillance, and further demanded that they produce their materials that they had surreptitiously gathered and/or concocted about Plaintiffs, including through any surveillance. However, Defendants refused, and their misconduct escalated. (Complaint, ¶¶ 48-50.)

Plaintiff Emre Umar was followed to his home by a surreptitious vehicle that sped away when he attempted to write down its license plate number. On **June 13, 2007**, another break in occurred at Plaintiffs' home. A Caucasian male matching the description of Defendant James Miller was seen exiting the garage connected to their home. Plaintiffs believe and allege that

Defendants James Miller and Investigative Services Agency, Inc., and/or persons employed or hired by Defendants, again trespassed, broke into and entered the home of Plaintiffs Emre Umar and Maria Umar in an unsuccessful attempt to retrieve the electronic listening device that they had previously illegally planted.  (Complaint, ¶¶ 52-53.)

**On June 18, 2007**, another trespass and break in occurred at Plaintiffs' home.  Witnesses will identify Defendant James Miller, whose picture and audio and video interviews are widely available on the internet, and a woman, as fleeing Plaintiffs' home.  Plaintiffs believe and allege that Defendants James Miller and Investigative Services Agency, Inc., and/or persons employed, hired by Defendants, and/or acting in concert with Defendants, trespassed, broke into and entered the home, this time successfully retrieving the electronic listening device that they had illegally planted.  (Complaint, ¶¶ 56-57.)

During these break-ins and trespasses, Defendants and/or persons employed, hired and/or acting in concert them, planted, and later retrieved, a radio frequency transmitter device, and tampered with telephone lines and the alarm system, through which Defendants illegally intercepted and re-transmitted Plaintiffs' private conversations, telephonic communications and electronic communications and transmissions.  (Complaint, ¶58.)  However, this retrieval left evidence of the existence, type and location of the illegal radio frequency transmitter device.  Defendants also left evidence of their tampering with the telephone lines and the alarm system.

Witnesses will identify Defendant James Miller as being the perpetrator of the break-in on **June 18, 2007**.  Southwest Airlines has also orally confirmed that records responsive to its Subpoena show that Defendant Miller flew from Philadelphia to Chicago on **June 20, 2007**.  *See* Exhibit "A."  Thus, he lied to the police on **June 21, 2007**, when he falsely stated that neither he nor Investigative Services Agency, Inc. conducted any surveillance, or hired any one else to do

so, and **had never been to Pennsylvania.** (Complaint, ¶¶59-60.) *See* Exhibit "B."

The subpoenas to the other travel and telephone companies will not only show that Defendant Miller committed the illegal and criminal misconduct in Pennsylvania, it will show how he did; with whom he did it; and when he did it. The telephone records will also show the extent and dates of communications between the Defendants, and with their co-conspirators that participated in the illegal and criminal misconduct.

## III.   <u>ARGUMENT</u>

### A.   **The Federal Rules of Civil Procedure Specifically Provide For The Full <u>Disclosure Of Discovery Sought By Defendants.</u>**

Federal Rule of Civil Procedure 26 provides in relevant part that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or the defense of the party seeking discovery or to the claim or defense of any other party. . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Additionally, Federal Rule of Civil Procedure 34 provides in relevant part that: "A person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45." Fed. R. Civ. P. 34(c).

Relevance for discovery purposes is broadly and liberally construed under the Federal Rules of Civil Procedure. *Herbert v. Lardo*, 441 U.S. 153 (1979); *Hickman v. Taylor*, 329 U.S. 495 (1947); *Connecticut Indem. Co. v. Markman*, 1993 WL 452104, *1 (E.D.Pa.,1993); *Stabilus, a Division of Fichtel & Sachs Industries, Inc. v. Haynesworth, Baldwin, Johnson and Greaves, P.A.*, 144 F.R.D. 258, 263 (E.D. Pa. 1992).

The location of Defendants, especially Defendant Miller, is highly relevant to Plaintiff's claims that he broke and entered into their home. He lied to the police that he has never even been

to Pennsylvania, when he had flown from Philadelphia to Chicago the day before his lie, and two days after the final break-in to Plaintiffs' home.  The jury must review the evidence of Defendant Miller's lies when it judges his and the other Defendants' credibility at trial.

Similarly, credit card accounts will show the purchase of any electronic equipment, which could date back several years, and expenditures for conducting the misconduct alleged in the Complaint, including rental vehicles, payments to other subcontractors, travel expenses and other evidence that Mr. Miller broke and entered into Plaintiff's home and conducted surveillance on Plaintiffs.

Defendants' counsel stated to this Court at the Pre-Trial Conference that Plaintiffs will not "find" any evidence of any payments from Defendant Douglas Gray to Defendants Miller and his company, Investigative Services Agency, Inc.  These subpoenas will provide evidence of their contacts, communications and conspiracy.

Similarly, the subpoenas to the telephone companies will provide evidence of Defendants' location, including in and around Plaintiffs' home and business, and the dates that they were there.  It will also show a record of their communications with each other, and communications to others that participated in the break-ins, surveillance and other misconduct.

Accordingly, as this Court has previously held, the subpoenas seek information relevant to the allegations of the Complaint and must be produced.  *Connecticut Indem. Co.*, 1993 WL 452104 at *3.  *See also  Great West Life Assurance Company v. Leviathan*, 152 F.R.D. 494, 497 (E.D. Pa. 1994) (tax and bank records of defendant insured and his wife were probative of the financial consequences of alleged sham transfer and were discoverable by insurer); *Constitution Bank v. Levine*, 151 F.R.D. 278, 282 (E.D. Pa. 1993) (bank records were discoverable in plaintiff's RICO and fraud action); *In re Reading Tube Corporation*, 73 B.R. 99, 100 (Bkrtcy. E.D. Pa. 1987)

(debtor's tax returns, canceled checks and business records were discoverable as they were material to the subject matter of the Chapter 11 litigation).

"The purpose of modern discovery rules is to allow the parties <u>to obtain the fullest possible knowledge of the issues and facts before trial</u>." *Crossley v. Iroquois Foundry Co.*, No. 91-1657, 1992 WL 114956, at *2 (E.D. Pa. May 18, 1992) (emphasis added and citing *Grennell Corp. v. Hackett*, 70 F.R.D. 326 (D.R.I. 1976)).   In the liberal spirit of these rules, where the requested discovery is "relevant to the claims at issue in the case, and such request [was] tendered in good faith and [is] not unduly burdensome, discovery shall proceed." *Brown v. Smythe*, 1991 WL 183578, at *2.

The discovery requested must be produced pursuant to the liberal language of the Federal Rules of Civil Procedure.

Plaintiffs' subpoena on non-parties clearly seek relevant and material information, and are calculated to lead to the discovery of admissible evidence.  Rule 45(c)(3)(A) only allows a Court to quash or modify an unduly burdensome subpoena under certain circumstances that do not exist here:

> (3)(A) on timely motion, the court by which a subpoena was issued shall quash or modify a subpoena if it
>
> (i)  fails to allow reasonable time for compliance,
>
> (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person. ..,
>
> (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
>
> (iv) subjects a person to undue burden.

Rule 45(c)(3)(A).  *See also* 9 *Moore's Federal Practice*, § 45, 1998.

Here, Plaintiffs' subpoenas allowed reasonable time for compliance; do not compel any

travel over 100 miles; did not require disclosure of privileged matters; and is in no way duplicative, burdensome or harassing.  Accordingly, this Court must deny the instant Motion and compel the recipients of the subpoenas to immediately comply with Plaintiffs' subpoena.  **Time is of the essence because the documents will begin to be purged in a few short weeks, and the recipients of the subpoenas need time to gather the information.**

Prior to the filing of Defendants' instant Motion, Plaintiffs served the following travel and credit card companies with subpoenas:  American Express Travel Service; Chase/ JP Morgan Chase Visa; Visa Inc.; Sato Travel; and Southwest Airlines.  Similarly, Plaintiffs also served the following telephone companies with subpoenas:  Sprint PCS/Nextel; T-Mobile; US Cellular; and Verizon Wireless.

Defendants misrepresent to this Court at ¶9 of their instant Motion that that "the subpoenas are not restricted to a relevant time period for which the documents were being sought."  To the contrary, as shown on the Subpoena attached as Exhibit "A" to Defendants' *own* instant Motion, the time period is restricted.  The subpoenas for the telephone records are restricted to the period from **January 1, 2007** to December 21, 2007.

> 4.     Unless otherwise requested, this Subpoena seeks documents from January 1, 2007 to the present.

Similarly, the subpoenas for the travel and credit card records are restricted to from **January 1, 2000** to December 21, 2007, which is the time period that Defendant Douglas Gray had a relationship with Plaintiff Maria Umar:

> 4.     Unless otherwise requested, this Subpoena seeks documents from January 1, 2000 to the present.

These time periods are reasonable because the allegations of relevance date back seven (7) **years**, and the allegations concerning Defendants' claims relate to the time between March 1,

2007 through the date that this action was commenced on July 11, 2007. Indeed, the Complaint specifically alleges at ¶41 of the Complaint that Defendants *previously* conducted investigations and surveillance on other personal and business targets.

Plaintiffs have not served any subpoenas since Defendants filed their Motion for a Protective Order, although additional subpoenas were in the process of being prepared and/or served at the time that Defendants filed their motion for a Protective Order.  These unserved subpoenas also seek time-sensitive evidence that must be preserved.

**B.     Defendants Have Not Provided The Necessary "Good Cause" For Their Requested Relief.**

It is well-settled that a party seeking an order protecting certain discovery from disclosure must establish that "good cause" exists for the protective order.  *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994); *Cipollone v. Ligget Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  Moreover, Defendants' broad conclusory allegations of harm cannot as a matter of law suffice without substantiation by specific examples.  *Barnes Foundation v. Township of Lower Merion*, C.A. No. 96-372, 1996 U.S. Dist. LEXIS 18436, at *7 (E.D. Pa. Dec. 6, 1996).

Defendants' Motion fails to demonstrate the existence of "good cause" to support their request. While it is true that this Court is empowered to issue an order to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense . . .", Fed. R. Civ. P. 26(c), the movant has the heavy burden of proving that a protective order is "particularly needed to obviate a significant harm; broad allegations of harm will not suffice." *Schofield v. Trustees of Univ. of Pennsylvania*, 161 F.R.D. 302, 303 (E.D. Pa. 1995).  *See also Frazier v. Southeastern Pennsylvania Transp. Auth.*, 161 F.R.D. 309, 313 (E.D. Pa. 1995).

Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do

not satisfy the Rule 26(c) test. [2] *Id.* at 1121; *DeFelice v. Consolidated Rail Corp.*, 124 F.R.D. 603, 604 (W.D. Pa. 1989)("[c]ourts have insisted on a particular and specific demonstration of fact, as distinguished from conclusory statements, in order to establish good cause").  Moreover, the harm must be significant, "not a mere trifle."  *Cipollone*, *supra*, 785 F.2d at 1121.

The discovery sought is essential to Plaintiffs not only reviewing the continuing misconduct of Defendants, but to Plaintiffs' ability to discover, depose, and expose the utter lack of credibility and timing of Defendants' misconduct.  Indeed, in preliminary response to the subpoenas, Southwest Airlines has confirmed that Defendant Miller lied to the police, which obstruction of justice is yet another crime he has committed.

This information is also essential to allow Plaintiffs to complete discovery and effectively prepare and present their claims to the jury.  Accordingly, Defendants have not shown, nor can prove, the requisite "good cause" needed for a protective order.

### C.    Defendants' Passing Reference To A Confidentiality Order Must Not Delay The Production Of Time-Sensitive Information

In passing, Defendants refer to another delay tactic that they intend to file **after** the Court rules on Defendants' Motion to Quash the Subpoenas.  Defendants state at ¶11 that they intend to file yet another motion for a protective order if this Court denies their Motion to Quash.  This is another delay tactic designed to delay production of time-sensitive evidence that Verizon Wireless and other recipients of the subpoenas will begin destroying on **March 1, 2008**.

---

[2] Federal Rule of Civil Procedure 26(c) provides, in pertinent part:

> Upon motion by a party...and for good cause shown, the court... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed. R. Civ. P. 26(c).

Federal Rules of Civil Procedure 26(c) squarely places the burden on the party seeking confidentiality to move for a protective order "for good cause shown."  Fed.R.Civ.P. 26(c).  The burden is on the party seeking confidentiality because it is that party that must demonstrate to the Court its reasons why a particular document is confidential:

> A party seeking a protective order over discovery materials must demonstrate that "good cause" exists for the protection of that material.  Fed.R.Civ.P. 26(c); <u>Pansy</u>, 23 F.3d at 786.  "Good cause" is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury.  <u>Id.</u>  Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice.  <u>Id.</u>  Glenmede and Pepper Hamilton bore the burden of establishing "good cause" to protect the umbrella of confidentiality established by the confidentiality agreement.

*Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

Blanket confidentiality stipulations are not favored in the courts of the Third Circuit.  *See Pansy*, 23 F.3d 772.  They clutter the docket, encumber the parties and the Court and necessarily result in motions being filed under seal and motions for leave to file motions under seal.

Umbrella confidentiality agreements are particularly susceptible to abuse by the designating party:

> To allow information to become presumptively confidential without affording plaintiffs an opportunity to disagree with that designation and then to bear the burden of mounting a challenge, would run afoul of the basic burden-shifting approach mandated by Rule 26(c).  As such, it violates the first amendment after <u>Seattle Times</u>.  Nor is the current Order necessary to protect the interest asserted by defendants, particularly where, as here, the information at issue is of great public interest and could be utilized to render future litigation far more efficient.  Finally, the court notes that by requiring defendants to shoulder the burden of proving confidentiality in the first instance, it changes the Protective Order but little, for defendants were required to withstand a confidentiality challenge at a later stage even under defendants' version of the Order.

*Cipollone v. Liggett Group Inc.*, 106 F.R.D. 573, 585 (D.N.J. 1985).  *See also Cipollone v. Liggett Group Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F.Supp. 232, 257 (D.Del. 1992).

This burden shifting is also not merely a procedural issue; it is a substantive one.  Protective orders are governed by Rule 26(c) and are issued by a court for the protection of parties and witnesses during the discovery process.  8 Wright & Miller, <u>Federal Practice & Procedure</u> §2035, at 260 (1979).  Under Rule 26(c), the Court has the power to enter a protective order only upon a demonstration of "good cause" in order to protect a party from, *inter alia*, annoyance, embarrassment, oppression or undue burden or expense.  *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 469 (E.D.Pa. 1997).  In ruling on a motion for a protective order, a court is required to balance a number of factors in evaluating whether "good cause" exists:

1)      whether disclosure will violate any privacy interests;

2)      whether the information is being sought for a legitimate purpose or for an improper purpose;

3)      whether disclosure of the information will cause a party embarrassment;

4)      whether confidentiality is being sought over information important to public health and safety;

5)      whether the sharing of information among litigants will promote fairness and efficiency;

6)      whether a party benefiting from the order of confidentiality is a public entity or official;  and

7)      whether the case involves issues important to the public.

*DeMasi v. Weiss*, 669 F.2d 114, 120 (3d Cir. 1982); *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 469 (E.D.Pa. 1997; *Doe v. William Shapiro, Esquire, P.C.*, 852 F. Supp. 1256, 1258 (E.D. Pa. 1994).

It is incumbent on the party <u>seeking</u> confidentiality to meet this burden and to address the factors set forth above.  They failed to do so.

Moreover, this Court already has procedures in place that require that all social security and financial information be redacted from any documents electronically filed to protect the public dissemination of sensitive financial information because of identity theft. *See* http://www.paed.uscourts.gov/documents/locrules/civil/cvrul512.pdf at §5.1.2 (12)(b).  Obviously, Plaintiffs will not file anything publicly that contains social security or account numbers.  They can and will be redacted as now required by this District's Local Rules.  Accordingly, a protective order is not necessary to require the parties to do what they are already required to do by the Rules.

## IV.    <u>CONCLUSION</u>

The information sought by these subpoenas is critical to the proof of Plaintiffs' claims. Defendants have already repeatedly lied to the police, to this Court, and to Plaintiffs.  They will desperately repeat their lies again in this action, until the production of documents unmasks their lies.  The information from these subpoenas will provide evidence that cannot be obtained in any other manner.  It is also information that will be destroyed by the telephone companies in a matter of a few weeks.  Accordingly, Plaintiffs respectfully request that the Court promptly issue the proposed order.

Respectfully submitted,


OF COUNSEL:

ELLIOTT GREENLEAF                              /s/ *John M. Elliott*
    & SIEDZIKOWSKI, P.C.                        JOHN M. ELLIOTT
                                                TIMOTHY T. MYERS
                                                BRUCE L. CASTOR, JR.
                                                COLIN D. DOUGHERTY
                                                Union Meeting Corporate Center V
                                                925 Harvest Drive
                                                Blue Bell, PA 19422
                                                215-977-1000
DATED:  January 10, 2008                        Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I, Timothy T. Myers, Esquire, hereby certify that on this date all counsel of record were

served with the forgoing pursuant to the electronic service provisions of this Court.

/s/ *Timothy T. Myers*
Timothy T. Myers

DATED:  January 10, 2008

EXHIBIT "A"

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Correctional Medical Care, Inc., et al.,** : | |
| **Plaintiffs** : | |
| **v.** : | **C.A. No. NO. 2:07-CV-02840-WY** |
| **J. Douglas Gray, et al.,** : | |
| **Defendants.** : | |

## DECLARATION OF TIMOTHY T. MYERS, ESQ.

I, Timothy T. Myers, Esquire hereby swear, depose and say as follows:

1.      I am a shareholder in the law firm of Elliott Greenleaf & Siedzikowski, P.C.

2.      On or about December 21, 2007, I caused a subpoena to be issued to Southwest Airlines, which was promptly served upon counsel for Defendants on December 24, 2007 after we had received confirmation of service upon Southwest Airlines.

3.      On December 26, 2007, I received a message from a custodian of records at Southwest Airlines that Defendant James Miller has had a Southwest Airlines frequent flyer account since 2005; that Southwest Airlines only had a few transactions for Mr. or Mrs. Gray at their home address; and requested that I return the call concerning the Subpoena.

4.      When I returned the call, I spoke with another Southwest Airlines custodian of records, who informed me that Defendant James Miller flew from Philadelphia to Chicago on Southwest Airlines on June 20, 2007; and that Mr. Miller has also flown to or from Pennsylvania on other occasions.

5.      Southwest Airlines also informed me that Southwest Airlines' policy is that it will not produce any of the actual records until ten (10) business days excluding holidays had passed to allow the persons whose information is subject to the subpoenas to object, which we both calculated this time period to be January 8, 2008.

6.      On January 2, 2008, Defendants' counsel sent a letter to all of the recipients of subpoenas, including Southwest Airlines, advising them that they objected to the production of any records and requesting them not to produce the records.

7.      Therefore, Plaintiffs have not yet received any documents responsive to the subpoenas, including the actual records proving that Defendant Miller flew from Philadelphia on June 20, 2008.

8.      On January 9, 2007, I received a fax from a custodian of records at Verizon Wireless which requested I contact Verizon Wireless to provide additional information concerning the Subpoena, and stating that Verizon Wireless would not produce any records until Defendants' Motion to Quash is resolved.

9.      Verizon Wireless informed me that Verizon Wireless has four (4) active cellular telephone accounts for Defendant James Miller; it does not have an active account for Defendant Douglas Gray, but it is still checking to see if a prior account meets the 2007 time specification of the Subpoenas; and that it does not have any telephone records for Defendant Karen Z. Gray.

10.     Verizon Wireless also informed me that Verizon Wireless only maintains its cellular site location information for a period of twelve (12) months before the information is purged, and that it will not release any such information without a court order specifying that such information must be produced.

11.     Verizon Wireless advised me that Verizon needs time in advance of the March 1, 2008 purge date to gather the information.

12.     In order to obtain the records showing the location of Defendant James Miller during the time of the break-ins in May and June 2007, and even prior to that time from March 1, 2007, when Defendants' misconduct began, this court must issue the order sufficiently in

advance of March 1, 2008 to allow Verizon Wireless, and any other telephone providers, to obtain the records before they are purged.

     13.    This Declaration is submitted subject to the penalties of perjury, pursuant to 28 U.S.C. Sec. 1746.


/s/ *Timothy T. Myers*     
Timothy T. Myers, Esquire

Dated: January 10, 2008

EXHIBIT "B"





# WHITPAIN TOWNSHIP POLICE

## MONTGOMERY COUNTY

### BLUE BELL, PA 19422

**Incident Report Supplemental**
**CRN:** 20070616034
**Filing Officer:** POTTER, BRAD; Detective; 38                **Filing Date:** 6/21/2007
**Entered By:** POTTER, BRAD; Detective; 38

**Supplemental:**
On Thursday, June 21, 2007 at 1145 hours, I called and spoke to James MILLER, 312-617-9414.
MILLER advised he knew why I was calling. MILLER said that he never followed Marie UMER or
went into her residence. MILLER said that the GRAY'S are no longer clients of the investigative firm.
MILLER also stated that he has never been to Pennsylvania nor hired anyone in Pennsylvania to follow
the UMER'S.

I called and spoke to victim, Marie UMER. I advised her of my conversation with MILLER. UMER
said that she just wanted all this "stuff" to stop. UMER was satisfied with me contacting MILLER.

UMER did not wish anymore police action.

Case status: Exceptionally cleared.

R/O_____Sgt._____Lt._____Chief_____