**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Correctional Medical Care, Inc., et al.,** | : | |
| **Plaintiffs** | : | |
| **v.** | : | **C.A. No. NO. 2:07-CV-02840-WY** |
| **J. Douglas Gray, et al.,** | : | |
| **Defendants.** | : | |

## <u>ORDER</u>

AND NOW, this _____ day of January 2008, upon consideration of Defendant Karen Z. Gray's Motion to Quash Subpoenas and for a Protective Order (Doc. 24), and Plaintiffs' Response thereto, it is hereby ORDERED and DECREED that the Motion is DENIED.

_____
Yohn, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Correctional Medical Care, Inc., et al.,** : | |
| **Plaintiffs** : | |
| **v.** : | **C.A. No. NO. 2:07-CV-02840-WY** |
| **J. Douglas Gray, et al.,** : | |
| **Defendants.** : | |

**PLAINTIFFS' RESPONSE TO DEFENDANT KAREN GRAYS'
MOTION TO QUASH SUBPOENAS AND FOR A PROTECTIVE ORDER**

Plaintiffs Correctional Medical Care, Inc. ("CMC"), Emre Umar and Maria Umar, hereby respond to the Motion to Quash filed by Defendant Karen Z. Gray. (Doc.24).

**I.      INTRODUCTION**

In response to a subpoena that Defendants seek to quash, Southwest Airlines confirmed that Defendant James Miller flew from Philadelphia to Chicago **on June 20, 2007**.[1]   The next morning, on **June 21, 2007**, Defendant James Miller brazenly lied to the Whitpain Township Police when he "also stated that **he has never been to Pennsylvania** nor hired anyone in Pennsylvania to follow the UMER's."   However, he admitted that he was hired by Defendant Karen Gray when he told the police that "the GRAY's are no longer clients of the investigative firm." [2]

Defendant Karen Gray admits that she had at least two discussions with Defendant Miller.  *See* Exhibit "A" at ¶20.  However, she fails to identify the date, time and duration of those calls.  Defendants' phone records will disclose the timing and extent of those discussions.

The subpoenas that Defendants seek to quash, and the discovery they seek to stay, will

---

[1] *See* Exhibit "A" to Plaintiffs' January 10, 2008 Response To Defendants' Motion To Quash Subpoenas (Doc.25).

[2] *See* Exhibit "B" to Plaintiffs' January 10, 2008 Response To Defendants' Motion To Quash Subpoenas (Doc.25)(emphasis added).

provide evidence concerning Plaintiffs' claims, including dates and times of conversations with Co-Defendants and co-conspirators; purchases of equipment used to commit the crimes and misconduct; rental vehicles; payments to co-conspiratorial subcontractors; and other evidence corroborating Defendants' misconduct.  They will also provide evidence of prior relationships between the Defendants, including Defendant Karen Gray, and their pattern and practice of engaging in substantially similar misconduct.  They will also provide evidence of Defendant Karen Gray's participation in the conspiracy, and her participation in the misconduct of Defendants Douglas Gray, James Miller and Investigative Services Agency, Inc. and, therefore, her contacts with Pennsylvania.  *See CDI International, Inc. v. Marck*, 2005 WL 146890 (E.D.Pa. January 21, 2005) (Court has personal jurisdiction over defendant who deployed a private investigator who committed intentional torts in Pennsylvania).

**Significantly, Verizon Wireless informed Plaintiffs that it only maintains its cellular site location information for a period of twelve (12) months before the information is purged.** [3]  Additionally, although it will not release any information until Defendants' Motion to Quash is resolved, it will not release this specific cellular site location information without a court order specifying that such information must be produced.  Thus, in order to obtain the records showing the location of Defendant James Miller during the time of the break-ins in May and June 2007, and even prior to that time from March 1, 2007, when Defendants' misconduct began, this court must issue the order sufficiently in advance of **March 1, 2008 t**o allow Verizon Wireless, and any other telephone providers, to obtain the records **before they are purged.**  *See 19th Street Baptist Church v. St. Peters Episcopal Church*, 190 F.R.D. 345, 347 (E.D.Pa.,2000). **Accordingly, Plaintiffs respectfully request expedited consideration of this Motion.**

---

[3] *See* Exhibit "A" to Plaintiffs' January 10, 2008 Response To Defendants' Motion To Quash Subpoenas (Doc.25).

Defendants, including Defendant Karen Gray, seek to delay compliance with these Subpoenas so that this evidence is destroyed.   Additionally, Plaintiffs are concerned that Defendants Douglas Gray, James Miller and Investigative Services Agency, Inc. will destroy and/or already have destroyed documents.   They have already lied to the police about committing criminal acts.   They are desperate people, who have committed serious crimes.   In response to this Court's questions at the pre-trial conference, concerning why Defendant Douglas Gray hired Defendants James Miller and Investigative Services Agency, Inc., their counsel provided different answers.   The last answer was that Plaintiffs will not be able to "find" any evidence of a payment from Defendant Douglas Gray to Defendants James Miller and Investigative Services Agency, Inc.

Therefore, it is also critical for Plaintiffs to obtain Defendants' banking and credit card records before they are purged.   These records will not only show payments between the Defendants, but also payments to co-conspirators that participated in the surveillance, break-ins and illegal wire-tapping.   They will also show the purchase or rental of equipment used for Defendants' illegal activities.   In order to issue subpoenas to such entities, Plaintiffs require Defendants' responses to Plaintiffs' Document Requests so that the appropriate entities can be identified and issued subpoenas.

Defendant Karen Gray's jurisdictional Motion cannot be used as a shield to this evidence, especially when much of this evidence is in imminent danger of being destroyed. **Significantly, regardless of the outcome of her Motion, this discovery will proceed, including all of the discovery relating to her.** She is the wife of Defendant Douglas Gray, who did **not** file a motion to dismiss based on jurisdictional grounds.   She shares bank accounts, credit card accounts, and has joint financial assets with him.   She is clearly a witness, in addition to being a party.

## II.   <u>STATEMENT OF THE FACTS</u> [4]

Defendant Douglas Gray and Plaintiff Maria Umar had a personal relationship until March 1, 2007.  (Complaint, ¶¶9-10.)  Defendant Douglas Gray used his prominent and highly visible business status, and his elite social status, to gain a sense of trust, confidence and induce Plaintiff Maria Umar.  (Complaint, ¶¶11-13.)

On **March 1, 2007**, Defendant Douglas Gray received a telephone call from Defendant Karen Gray, which disclosed to Plaintiff Maria Umar that he had not been truthful with her, and that he was not estranged from his wife.  Plaintiff Maria Umar immediately ended the relationship.  (Complaint, ¶¶14-16.)  That night, Defendant Karen Gray started calling and harassing Plaintiff Maria Umar.

On **March 4, 2007**, Defendants Douglas Gray and Karen Gray called Plaintiff Maria Umar, and continued their harassing misconduct.  (Complaint, ¶21.)  Three days later, Defendant Douglas Gray called Plaintiff Maria Umar again, this time telling her that Defendant Karen Gray had found out about Plaintiffs' business, Plaintiff CMC.  Both he and Defendant Karen Gray intended this to intimidate and threaten Plaintiffs through jeopardizing their business.  He also left messages telling her that his wife very agitated, there was no telling what she may do, and that she was threatening to contact and harass Plaintiff Emre Umar.

On **April 12, 2007**, Defendant Douglas Gray again called Plaintiff Maria Umar, purportedly to "forewarn" her that he and Defendant Karen Gray were going to call her yet again, to further harass her.  He also told her that he concocted a ruse to scare Defendant Karen Gray away from Plaintiffs, by telling her that Plaintiffs were dangerous, and could pose a threat to them.  He said that Defendant Karen Gray and/or he were considering hiring a private

---

[4] The facts are more fully set forth in Plaintiffs' December 10, 2008 Response to Defendants' Motion to Quash (Doc.23).

investigator to conduct a background check of Plaintiffs.  (Complaint, ¶¶28-31.)

On or about **May 19, 2007,** Defendant Douglas Gray called Plaintiff Maria Umar falsely purporting to express his concern for her safety, and insinuating that she should feel endangered by her husband, Plaintiff Emre Umar.  Unbeknownst to Plaintiffs, at this point Defendants, including Defendant Karen Gray, already had them under surveillance.  (Complaint, ¶40.) Moreover, Defendants knew that Plaintiff Emre Umar was not a threat to any one.  Again, this was all part of Defendants' set-up and/or ruse.  (Complaint, ¶¶32-34.)

The Complaint clearly alleges at ¶35 and ¶47 that Defendant Karen Gray hired Defendants Miller and Investigative Services Agency and/or others that also committed this outrageous misconduct.  Indeed, the Affidavit submitted by Defendant Karen Gray in support of her jurisdictional motion admits at ¶20 that she spoke with Defendant Miller at least twice.  *See* Exhibit "A."  It fails to state that she did not speak with any other agents, or to any other employees of Defendant Miller and Investigative Services Agency.  After discovery, the record will also show that Defendant Karen Gray hired Defendant James Miller and Investigative Services Agency, and/or that they acted as her agents.

On **May 25, 2007**, a break-in occurred at the home of Plaintiffs Emre and Maria Umar, which is located in a private gated community.  This is when Plaintiffs believe and allege that Defendants broke into and entered the home of Plaintiffs Maria and Emre Umar, and illegally planted a surreptitious electronic listening devices to intercept and rebroadcast the confidential, personal and business communications of Plaintiffs.  (Complaint, ¶¶ 42-43.)  However, at the time, Plaintiffs did not know, and could not know, that Defendants were committing such illegal and outrageous misconduct.

On or about May 29, 2007, Plaintiff Maria Umar realized that Defendants somehow

knew about details about what was occurring within the privacy of Plaintiffs' home and/or business, and she confronted Defendants on **June 4, 2007.** Defendant James Miller and Investigative Services Agency, Inc. brazenly admitted that they had her and her family under 24 hour surveillance. Defendant Miller stated that Defendants Douglas **and Karen Gray** had hired him and Defendant Investigative Services Agency, Inc. (Complaint, ¶¶ 44-47.)

When Plaintiff Maria Umar refused to be coerced into another charade contrived by Defendants, Defendant Miller threatened to interfere with Plaintiffs' business and contracts, if she did not surrender to Defendants' demands. She immediately told him again that Defendants' accusations were false, as she had previously advised Defendant Douglas Gray. She reiterated her demand that Defendants immediately cease their background check and surveillance, and further demanded that they produce their materials that they had surreptitiously gathered and/or concocted about Plaintiffs, including through any surveillance. However, Defendants refused, and their misconduct escalated. (Complaint, ¶¶ 48-50.)

On or about **June 13, 2007**, another break in occurred at Plaintiffs' home. A Caucasian male matching the description of Defendant James Miller was seen exiting the garage connected to their home. Plaintiffs believe and allege that Defendants James Miller and Investigative Services Agency, Inc., and/or persons employed or hired by Defendants, again trespassed, broke into and entered the home of Plaintiffs Emre Umar and Maria Umar in an unsuccessful attempt to retrieve the electronic listening device that they had previously illegally planted. (Complaint, ¶¶ 52-53.)

**On June 18, 2007**, another trespass and break in occurred at Plaintiffs' home. Witnesses will identify Defendant James Miller and a woman, as fleeing Plaintiffs' home. Plaintiffs believe and allege that Defendants James Miller and Investigative Services Agency, Inc., and/or persons

employed, hired by Defendants, and/or acting in concert with Defendants, trespassed, broke into and entered the home, this time partially retrieving the electronic listening and re-broadcasting device that they had illegally planted.  (Complaint, ¶¶ 56-57.)

During these break-ins and trespasses, Defendants and/or persons employed, hired and/or acting in concert them, planted, and later retrieved, a radio frequency transmitter device, and tampered with telephone lines and the alarm system, through which Defendants illegally intercepted and re-transmitted Plaintiffs' private conversations, telephonic communications and electronic communications and transmissions.  (Complaint, ¶58.)  However, this retrieval left evidence of the existence, type and location of the illegal radio frequency transmitter device. Defendants also left evidence of their tampering with the telephone lines and the alarm system.

Witnesses will identify Defendant James Miller as being the perpetrator of the break-in on **June 18, 2007**.  Southwest Airlines has also orally confirmed that records responsive to its Subpoena show that Defendant Miller flew from Philadelphia to Chicago on **June 20, 2007**. Thus, he lied to the police on **June 21, 2007**, when he falsely stated that he had not conducted any surveillance, or hired any one else to do so, and **had never been to Pennsylvania.** (Complaint, ¶¶59-60.)

The subpoenas and discovery will not only show that Defendant Miller committed the illegal and criminal misconduct in Pennsylvania, it will show how he did; with whom he did it; and when he did it.  This discovery will also show Defendants' misconduct, the extent and dates of communications between the Defendants, and with their co-conspirators that participated in the illegal and criminal misconduct.

## III.   ARGUMENT

This Court clearly has personal jurisdiction over Defendant Karen Gray because she hired

a private investigator who committed intentional torts in this forum against residents of this forum. *CDI International, Inc. v. Marck*, 2005 WL 146890 (E.D.Pa. January 21, 2005). **Defendant Karen Gray's jurisdictional Motion cannot be used as a shield to this evidence, especially when much of this evidence is in imminent danger of being destroyed.** As set forth below, this Court must immediately deny Defendants' Motions seeking the delay and obstruction of discovery because critical evidence is in imminent danger of being lost forever. *19th Street Baptist Church v. St. Peters Episcopal Church*, 190 F.R.D. 345, 347 (E.D.Pa.,2000).

A.    **Any Stay Of Discovery Pending Disposition Of Defendant Karen Gray's Jurisdictional Motion Must Be Denied Because Of The Extreme Prejudice To Plaintiffs**

Defendants would have this Court believe that a stay of discovery is appropriate whenever a party files a motion which purports to be possibly dispositive of all claims. She argues that such stays of discovery should be granted as a matter of course, even when a motion to dismiss is filed that is improperly fact-intensive and legally inaccurate, like the Motion she has submitted in this case. *See CDI International*, 2005 WL 146890 (Court has personal jurisdiction over defendant who deployed a private investigator who committed intentional torts in Pennsylvania).

Under the Federal Rules of Civil Procedure, an issue of the preservation of evidence triggers slightly different procedures and entitles the party seeking to preserve the evidence to substantial rights. *19th Street Baptist Church*, 190 F.R.D. at 347. For Federal Rule of Civil Procedure 27 to apply, which ordinarily applies to testimony, but also applies to evidence, a party "'must demonstrate a need for [the testimony or evidence] that cannot easily be accommodated by other potential witnesses,' must show that the testimony is 'relevant, not simply cumulative,' and must convince the court that the evidence sought 'throws a different, greater, or additional light on a key

8

issue.'" *Id.* (quoting *Deiulemar v. Allegra*, 198 F.3d 473, 486-87 (4th Cir.1999)).

When a potentially dispositive motion to dismiss has been filed, "the court should carefully balance the relative benefit and harm that would ensue to each party from the grant or denial of a stay." *19th Street Baptist Church*, 190 F.R.D. at 349.  In applying these principles, the Court in *19th Street Baptist Church* reasoned:

> With this teaching in mind, the court will attempt to calibrate the appropriate factors. On the one hand, defendants' motions present a viable challenge to the court's jurisdiction. Accordingly, it is likely that a ruling on their motions will narrow or completely eliminate discovery in this case. *See id.* Yet, even if defendants' jurisdictional challenges succeed, a decision in their favor will not come for some time given the complex issues the court must address and likely appeal that would follow if a dismissal is granted. On the other hand, plaintiffs' proffered testimony appears relevant, not cumulative, and likely to shed a different, greater, or additional light on the key issue of notice in this case. If this testimony is lost due to death or infirmity, plaintiffs effectively would be put out of court. Thus, while the stay of discovery would be potentially fatal to plaintiffs, proceeding with plaintiffs' depositions would only be burdensome to defendants. Finally, the expense defendants will incur is relatively modest in this case, and defendants are apparently well heeled entities represented by able counsel.

*19th Street Baptist Church*, 190 F.R.D. at 349.  *See also Mamo v. BP P.L.C.*, 2006 WL 897217, *2 (E.D.Va.,2006)("The Order acknowledges that the motion to dismiss [for lack of personal jurisdiction] could prove to be dispositive; however, even in light of that fact, the Order recognizes that the Court cannot afford to delay discovery pending resolution…");

Notwithstanding Defendant Karen Gray's citations to discrete and unique opinions from other Districts, motions to stay discovery pending a decision on a motion to dismiss are **disfavored**, because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and eliminate and minimize unnecessary litigation expenses and problems. *Coca-Cola Bottling Co. of the Lehigh*

*Valley v. Grol*, 1995 W.L. 421900 at *2 (E.D. Pa. 1993). *See also Carol Cable Co., Inc. v. Koffler*, 1989 WL 83426, *1 (E.D.Pa.,1989)(denying defendant's motion to stay discovery without resolving the motion to dismiss); *Pharmastem Therapeutics, Inc. v. Cord Blood Registry, Inc.*, 2005 WL 40069, *1 (N.D.Cal.,2005); *In re Midlantic Corp. Shareholder Litigation*, 758 F.Supp. 226, 230 (D.N.J.,1990)(Defendants' motion to stay merits discovery previously denied); *Sacco v. Prudential-Bache Securities, Inc.*, 703 F.Supp. 362, *366 (E.D.Pa.,1988)( discovery should proceed relevant to other claims).

If the drafters of the Federal Rules of Civil Procedure desired an automatic stay of discovery pending a motion to dismiss, they would have so provided, but they did not do so. *Coca-Cola Bottling*, 1995 W.L. 421900 at *2 (*citing Moran v. Flaherty*, No. 92-3200, 1992 W.L. 276913 (S.D. N.Y. September 25, 1992); *Gray v. First Winthrop Corporation*, 133 F.R.D. 39, 40 (N.D. Cal. 1990)).

This is not to say that a Court does not have the discretion to order a stay of discovery pending a motion to dismiss, but such discretion should be exercised only when there has been a showing of "good cause," and there is a good possibility that the motion will be granted and entirely eliminate the need for such discovery. *Id.* Such is not the case here. **Defendant Karen Gray will be subject to the exact same discovery regardless of whether her jurisdictional Motion is granted.**

In courts of this District, a motion to dismiss for lack of personal jurisdiction does not stay discovery. To the contrary, the Court may also allow the parties to conduct discovery. *Lexington Ins. Co. v. Forrest*, 354 F.Supp.2d 549, 552 (E.D.Pa.,2005) ("*Lexington II*"). If the court neither conducts an evidentiary hearing nor permits limited discovery to determine personal jurisdiction, the plaintiff need make only a *prima facie* showing of jurisdiction through

its affidavits and supporting materials.  *Lexington Ins. Co. v. Forrest*, 263 F.Supp.2d 986, 992 (E.D.Pa.,2003) ("*Lexington I*").   Because proof of a conspiracy often rests in the hands of the alleged conspirators, dismissals of such claims prior to providing plaintiffs ample opportunity for discovery are to be granted "very sparingly."  *CDI International, Inc. v. Marck*, 2005 WL 146890 at *7 (E.D.Pa. January 21, 2005).   Accordingly, Defendant Karen Gray's Motion to Stay Discovery must be denied.

> **B.      The Federal Rules of Civil Procedure Specifically Provide For The Full Disclosure Of Discovery Sought By Plaintiffs.**

Federal Rule of Civil Procedure 26 provides in relevant part that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or the defense of the party seeking discovery or to the claim or defense of any other party. . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  Additionally, Federal Rule of Civil Procedure 34 provides in relevant part that:  "A person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45."  Fed. R. Civ. P. 34(c).

Relevance for discovery purposes is broadly and liberally construed under the Federal Rules of Civil Procedure.  *Herbert v. Lando*, 441 U.S. 153 (1979); *Connecticut Indem. Co. v. Markman*, 1993 WL 452104, *1 (E.D.Pa.,1993).  "The purpose of modern discovery rules is to allow the parties to obtain the fullest possible knowledge of the issues and facts before trial."  *Crossley v. Iroquois Foundry Co.*, No. 91-1657, 1992 WL 114956, at *2 (E.D. Pa. May 18, 1992) (emphasis added and citing *Grennell Corp. v. Hackett*, 70 F.R.D. 326 (D.R.I. 1976)).

The location of Defendants, especially Defendant Miller, and the timing, extent and nature of their communications, is highly relevant to Plaintiff's claims that Defendants conspired to break

and enter into their home.  Defendant Miller lied to the police that he has **never even been to Pennsylvania**, when he had flown from Philadelphia to Chicago the day before his lie, and two days after the final break-in to Plaintiffs' home.  The jury must review the evidence of Defendant Miller's lies when it judges his and the other Defendants' credibility at trial.

Similarly, Defendants' financial and banking records will show the existence of any payments between defendants, and any payments to co-conspirators.  Credit card accounts will show the purchase of any electronic equipment, which could date back several years, and expenditures for conducting the misconduct alleged in the Complaint, including rental vehicles, payments to other subcontractors, travel expenses and other evidence of Defendants' breaking into Plaintiff's home and conducting surveillance on them.  They will also show a pattern and practice of at least Defendant Douglas Gray and Defendants Miller and Investigative Services Agency, Inc. participating in similar misconduct in other business and personal affairs.

Counsel for Defendants Douglas Gray, Miller and Investigative Services Agency, Inc. brazenly stated to this Court at the Pre-Trial Conference that Plaintiffs will not "find" any evidence of any payments from Defendant Douglas Gray to Defendants Miller and his company, Investigative Services Agency, Inc.  These subpoenas and this discovery will provide evidence of their contacts, communications and conspiracy, and will lead to the discovery of additional admissible evidence.

Similarly, the subpoenas to the telephone companies will provide evidence of Defendants' location, including in and around Plaintiffs' home and business, and the dates that they were there.  It will also show a record of their communications with each other, and communications to others that participated in the break-ins, surveillance and other misconduct.

Accordingly, as this Court has previously held, the subpoenas and discovery seek

information relevant to the allegations of the Complaint and must be produced. *Connecticut Indem. Co.*, 1993 WL 452104 at *3. *See also Great West Life Assurance Company v. Leviathan*, 152 F.R.D. 494, 497 (E.D. Pa. 1994) (tax and bank records of defendant insured and his wife were probative of the financial consequences of alleged sham transfer and were discoverable by insurer); *Constitution Bank v. Levine*, 151 F.R.D. 278, 282 (E.D. Pa. 1993) (bank records were discoverable in plaintiff's RICO and fraud action); *In re Reading Tube Corporation*, 73 B.R. 99, 100 (Bkrtcy. E.D. Pa. 1987) (debtor's tax returns, canceled checks and business records were discoverable as they were material to the subject matter of the Chapter 11 litigation).

Plaintiffs' subpoena on non-parties clearly seek relevant and material information, and are calculated to lead to the discovery of admissible evidence. Rule 45(c)(3)(A) only allows a Court to quash or modify an unduly burdensome subpoena under certain circumstances that do not exist here:

> (3)(A) on timely motion, the court by which a subpoena was issued shall quash or modify a subpoena if it
>
> (i)  fails to allow reasonable time for compliance,
>
> (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person. ...,
>
> (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
>
> (iv) subjects a person to undue burden.

Rule 45(c)(3)(A). *See also* 9 *Moore's Federal Practice*, § 45, 1998.

Here, Plaintiffs' subpoenas allowed reasonable time for compliance; do not compel any travel over 100 miles; did not require disclosure of privileged matters; and is in no way duplicative, burdensome or harassing. Accordingly, this Court must deny the instant Motion and compel the recipients of the subpoenas to immediately comply with Plaintiffs' subpoena. **Time is of the**

essence because the documents will begin to be purged in a few short weeks, and the recipients of the subpoenas need time to gather the information.

### C. Defendant Karen Gray Has Not Provided The Necessary "Good Cause" For Her Requested Relief.

Defendant Karen Gray has not stated any reason for this court to stay discovery and further delay the progress of this action.  In contrast, as set forth above, a delay of this critical discovery will severely prejudice Plaintiffs because certain critical evidence is in imminent danger of being destroyed.

It is well-settled that a party seeking an order protecting certain discovery from disclosure must establish that "good cause" exists for the protective order.  *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994); *Cipollone v. Ligget Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  Moreover, Defendant Karen Gray's broad conclusory allegations of harm cannot as a matter of law suffice without substantiation by specific examples.  *Barnes Foundation v. Township of Lower Merion*, C.A. No. 96-372, 1996 U.S. Dist. LEXIS 18436, at *7 (E.D. Pa. Dec. 6, 1996).

Defendant Karen Gray's Motion fails to demonstrate the existence of "good cause" to support her request.  The only reason that she proffers is her pending Motion to Dismiss.  Defendant Karen Gray's jurisdictional Motion cannot be used as a shield to this evidence, especially when much of this evidence is in imminent danger of being destroyed.  Regardless of the outcome of her Motion, this discovery will proceed, including all of the discovery relating to her.  She is the wife of Defendant Douglas Gray, who did **not** file a motion to dismiss based on jurisdictional grounds.  She shares bank accounts, credit card accounts, and has joint financial assets with him. She is clearly a witness, in addition to being a party.

While it is true that this Court is empowered to issue an order to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense...", Fed. R. Civ. P. 26(c), the

movant has the heavy burden of proving that a protective order is "particularly needed to obviate a significant harm; broad allegations of harm will not suffice." *Schofield v. Trustees of Univ. of Pennsylvania*, 161 F.R.D. 302, 303 (E.D. Pa. 1995). *See also Frazier v. Southeastern Pennsylvania Transp. Auth.*, 161 F.R.D. 309, 313 (E.D. Pa. 1995).

Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.[5] *Id.* at 1121; *DeFelice v. Consolidated Rail Corp.*, 124 F.R.D. 603, 604 (W.D. Pa. 1989)("[c]ourts have insisted on a particular and specific demonstration of fact, as distinguished from conclusory statements, in order to establish good cause"). Moreover, the harm must be significant, "not a mere trifle." *Cipollone*, *supra*, 785 F.2d at 1121.

The discovery sought is essential to Plaintiffs not only reviewing the continuing misconduct of Defendants, but to Plaintiffs' ability to discover, depose, and expose the utter lack of credibility and timing of Defendants' misconduct. Indeed, in preliminary response to the subpoenas, Southwest Airlines has confirmed that Defendant Miller lied to the police, which obstruction of justice is yet another crime he has committed.

This information is also essential to allow Plaintiffs to complete discovery and effectively prepare and present their claims to the jury. Accordingly, Defendant Karen Gray has not shown, nor can prove, the requisite "good cause" needed for a protective order.

**IV.   <u>CONCLUSION</u>**

The information sought by these subpoenas is critical to the proof of Plaintiffs' claims.

---

[5] Federal Rule of Civil Procedure 26(c) provides, in pertinent part:

> Upon motion by a party...and for good cause shown, the court... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed. R. Civ. P. 26(c).

Defendants Douglas Gray, James Miller and Investigative Services Agency, Inc. have already repeatedly lied to the police, to this Court, and to Plaintiffs.  They will desperately repeat their lies again in this action, until the production of documents unmasks their lies.  The discovery sought will provide evidence that cannot be obtained in any other manner.  It is also information that will be destroyed by the telephone companies in a matter of a few weeks.

Defendant Karen Gray's jurisdictional Motion cannot be used as a shield to this evidence, especially when much of this evidence is in imminent danger of being destroyed.  Regardless of the outcome of her Motion, this discovery will proceed, including all of the discovery relating to her.  She is the wife of Defendant Douglas Gray, who did **not** file a motion to dismiss based on jurisdictional grounds.  She shares bank accounts, credit card accounts, and has joint financial assets with him.  She is clearly a witness, in addition to being a party.

Accordingly, Plaintiffs respectfully request that the Court promptly deny Defendants' Motions and issue the proposed orders.

Respectfully submitted,

OF COUNSEL:

ELLIOTT GREENLEAF                    /s/ *John M. Elliott*
    & SIEDZIKOWSKI, P.C.             JOHN M. ELLIOTT
                                     TIMOTHY T. MYERS
                                     BRUCE L. CASTOR, JR.
                                     COLIN D. DOUGHERTY
                                     Union Meeting Corporate Center V
                                     925 Harvest Drive
                                     Blue Bell, PA 19422
                                     215-977-1000
DATED:  January 11, 2008            Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy T. Myers, Esquire, hereby certify that on this date all counsel of record were served with the forgoing pursuant to the electronic service provisions of this Court.


/s/ *Timothy T. Myers*
Timothy T. Myers


DATED:  January 11, 2008

# EXHIBIT "A"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Correctional Medical Care, Inc., et al.,** | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | C.A. No. 2:07-CV-02840-WY |
| | : | |
| **J. Douglas Gray, et al.,** | : | |
| **Defendants.** | : | |

## DECLARATION OF KAREN Z. GRAY

I, KAREN Z. GRAY, hereby depose and say as follows:

1.      I am an adult individual residing at 301 North Sheridan Road, Lake Forest, Illinois 60045.

2.      I have been married to J. Douglas Gray for 24 years.  Together, we have two children, John, age 18, and Alexandra, age 14.

3.      I have lived in the State of Illinois for over 30 years.  I grew up in Ohio, went to college in Ohio, and then lived in New York City for two years before moving to Illinois.

4.      I am very active in the Lake Forest and Chicago area communities.  I was the past-President of the Women's Board of the Boys' and Girls' Club of Chicago.  I am the President of the Women's Board of the Field Museum of Chicago.  I am a long-standing member of the Women's Board of the Art Institute of Chicago.  I am on the Women's Board of Northwestern University.  Until recently, I was a long-time member of the Allendale Shelter Club of Lake Forest (which provides funding and services to abused children in the Chicago

area).  I am the President of the Ann Milligan Gray Scholarship Fund (honoring my deceased mother-in-law), which provides scholarships to underprivileged children who utilize the Chicago Boys and Girls Clubs.  I am a member of the Women's Athletic Club of Chicago.  I belong to the Shoreacres Country Club, the Racket Club of Chicago, the Chicago Club, and the Winter Club of Lake Forest.  I do not belong to any Pennsylvania clubs or organizations.

5.      At no time have I ever resided in Pennsylvania or been a citizen of the Commonwealth of Pennsylvania.

6.      I have never consented to jurisdiction in Pennsylvania.

7.      I have never owned or rented any property in Pennsylvania.

8.      I have never vacationed in Pennsylvania.

9.      I am not licensed to do business in Pennsylvania.

10.     I do not have any employees or agents in Pennsylvania.

11.     I have traveled to Pennsylvania on only one occasion.  On March 29, 2006, I accompanied my daughter Alexandra to Lawrenceville, New Jersey to visit Lawrenceville Prep. She and I flew into Philadelphia International Airport, where I rented a car and then drove to Lawrenceville, where we spent the night.  I returned the car in New York City and flew home from there.

12.     I have never had a bank account in Pennsylvania.

13.     I have never been subject to taxation in Pennsylvania.

DMEAST #9865413 v4

14.     I have never applied for a loan in Pennsylvania.

15.     I have never initiated litigation or appeared in litigation in Pennsylvania.

16.     I have never acted as a guarantor or co-signer on a bank loan in Pennsylvania.

17.     I have never anticipated or intended that I be subject to personal jurisdiction in a Pennsylvania court.

18.     Prior to March 1, 2007, I had no knowledge whatsoever of any extramarital affairs on the part of my husband, Doug Gray.  I did not learn of the full extent of Doug's relationship with Mrs. Umar until I read the Complaint.

19.     I have spoken with Mrs. Umar on two occasions, once, on March 1, 2007, when I called her and spoke with her for less than 30 seconds while she was in Milwaukee, and a second time, two or three days later, when she returned my husband's call and spoke to us for approximately ten minutes.  I believe Mrs. Umar was at home during this second call.

20.     I was not involved in the decision to retain a private investigator, the selection of the private investigator, the hiring of Jim Miller or Investigative Services Agency, Inc., or the issuance of any instructions or requests of either Mr. Miller or his company.  I spoke with Mr. Miller only twice, both times after my husband retained him.  I never issued any instructions to or made any requests of Mr. Miller or his company with regard to Mr. or Mrs. Umar.  I have no knowledge of and was not involved in any attempts by Mr. Miller or anyone else to plant electronic devices in Mrs. Umar's home, to enter Mrs. Umar's home, or interfere or in any way interact with Mrs. Umar's or her husband's business and contracts, if such acts actually did occur.

DMEAST #9865413 v4

21.   My mother and brother reside with me in Lake Forest, Illinois, and the majority of my family and everyone else who are supporting me during this difficult time resides either in Ohio or Illinois.  None of my support network lives in Pennsylvania.

I declare under penalty of perjury that the foregoing is true and correct.

BY:  _____
     KAREN Z. GRAY

DATED:  August 31, 2007

DM_EAST #9865413 v4