# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CORRECTIONAL MEDICAL CARE, INC. | : | |
| et al., | : | CIVIL ACTION |
|    Plaintiffs, | : | |
| | : | NO. 07-2840 |
|      v. | : | |
| | : | |
| J. DOUGLAS GRAY, et al. | : | |
|    Defendants. | : | |

## Memorandum and Order

YOHN, J.                                                                                   January _____, 2008

Plaintiffs Correctional Medical Care, Inc. ("CMC"), Emre Umar and Maria Umar assert nine

claims against defendants J. Douglas Gray, Karen Gray, Investigative Services Agency, Inc. ("ISA"),

James Miller (President of ISA) and John and Jane Does.  The claims include invasion of privacy

(Count I); trespass (Count II); interception of wire, oral, or electronic communications in violation

of federal and state law (Counts III and IV); intentional infliction of emotional distress (Count V);

negligence (Count VI); negligent hiring and supervision (Count VII); commercial disparagement

(Count VIII); and civil conspiracy (Count IX).  Presently before the court are Karen's motion to

dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure;

and Karen, Douglas, Miller, and ISA's motions to dismiss for lack of subject matter jurisdiction

under Rule 12(b)(1), to dismiss for failure to state a claim upon which relief may be granted under

Rule 12(b)(6), to strike the complaint for failing to recite a short and plain statement of the claim

under Rule 8(a)(4), and to strike paragraphs 12 and 13 of the complaint as immaterial, impertinent, and prejudicial under Rule 12(f).

## I. Factual and Procedural Background

This case involves allegedly unlawful private investigative activities that occurred at the end of an extramarital relationship. Douglas and Maria had an extramarital affair while Douglas was married to Karen and Maria was married to Emre. (Compl. ¶ 10.) Douglas and Maria's relationship ended on March 1, 2007, when Douglas's wife Karen discovered the affair while Douglas and Maria were together in Milwaukee, Wisconsin. (*Id.* at ¶¶ 14-16.) Douglas called Maria that evening to warn her that Karen might call her. (*Id.* at ¶ 17.) As forewarned, Karen called Maria on her mobile phone in Milwaukee that evening and told Maria that Douglas "had other female friends." (*Id.* at ¶ 18.)

Later, Douglas informed Maria that, in an attempt to cover up his infidelity, he told Karen that Maria and Emre were dangerous, so Karen should not pursue the matter any further. (*Id.* at ¶ 20.) Nonetheless, Douglas told Maria that Karen insisted on calling Maria again, this time with Douglas on the phone. (*Id.* at ¶ 20.) On March 4, 2007, Douglas and Karen called Maria and demanded that Maria stop calling Douglas and leave the Grays alone. (*Id.* at ¶ 21.)[1] On March 7, 2007, Douglas again called Maria, leaving a message warning that Karen might call Emre. (*Id.* at

---

[1] According to the complaint, Maria did not initiate any communication with Douglas after March 1, 2007 or with Karen at any time. (Compl. ¶ 22.) In a sworn affidavit attached to her motion to dismiss for lack of personal jurisdiction, however, Karen states that the March 4, 2007 conversation was initiated by Maria when Maria returned a call placed by Douglas and that Maria then spoke to Douglas and Karen for ten minutes. (Karen Decl. ¶ 19.) For the purposes of the present motions, the court will take the facts as alleged in the complaint as true and assume that Douglas and Karen completed the call to Karen on March 4, 2007.

¶ 24.)  During that message, he asked Maria to call a number unknown to Karen to clarify the dates of their meetings so that their facts would be consistent.  (*Id.* at ¶ 25.)  Douglas subsequently called Maria on repeated occasions for the purpose of coordinating their stories.  (*Id.* at ¶ 26.)

In March and April, Douglas continued to tell Maria that Karen was "agitated" and intended to call the Umars, and that he was attempting to dissuade Karen from contacting the Umars by representing to her that they were "dangerous" and "volatile."  (*Id.* at ¶ 27.)  By April 12, 2007, however, Douglas told Maria that Karen was "simmering down," that Karen just wanted to be assured that "this thing is done," and that she would not contact the Umars.  Nonetheless, Douglas warned that he and Karen might call again to tell Maria that she could not contact Douglas anymore.  (*Id.* at ¶¶ 28-29.)[2]  Douglas also said that he and Karen were considering hiring a private investigator to conduct a background check on the Umars.  (*Id.* at ¶ 31.)  Ultimately, they hired Miller and ISA.  (*Id.* at ¶¶ 31, 35.)

On May 19, 2007, Douglas called Maria again, this time expressing his concern for her safety, purportedly because she should feel threatened by Emre.  (*Id.* at ¶ 32.)  Maria responded that Emre was not a threat.  (*Id.* at ¶ 35.)  Douglas and Miller then told Maria that Karen hired Miller as a private investigator to conduct a background check on Emre.  (*Id.* at ¶ 35.)[3]  Miller demanded that

---

[2] As alleged, Karen never contacted Maria again.

[3] In her affidavit, Karen denies hiring Miller or ISA.  (Karen Decl. ¶ 20.)   Her declaration states: "I was not involved in the decision to retain a private investigator, the selection of the private investigator, the hiring of Jim Miller or Investigative Services Agency, Inc., or the issuance of any instructions or requests of either Mr. Miller or his company."  (*Id.*)  In response, plaintiffs attached two police reports and an affidavit by Maria swearing to the veracity of the complaint.  (Pls.' Ex. A, B, C.)  In the first report, the Umars reported to the police that Douglas told Maria that Karen hired Miller and ISA.  (Pls.' Ex. B at 2, 3.)  In the second report, Miller told the police that "the Gray's [sic] were no longer clients of ISA," (Pls.' Ex. C at 1), thereby arguably implying that Douglas and Karen hired Miller and ISA at some earlier point.

3

Maria cooperate with this background check as part of Douglas's cover-up of their affair.  (*Id.* at ¶ 36.)

Thereafter, Miller and ISA agents called Maria seeking information about Emre, including his social security number, for their background check on Emre.  (*Id.* at ¶ 37.)  On May 23 and 25, 2007, Miller called Maria for additional information about Emre, again for the background check.  (*Id.* at ¶ 38.)  Maria provided the requested information in response to Miller's and the ISA agents's repeated demands.  (*Id.* at ¶ 39.)  On May 29, 2007, Miller forwarded the background check to Maria by e-mail.  (*Id.* at ¶¶ 44, 45.)  The e-mail contained additional e-mail messages forwarded from other ISA employees that stated that Emre "is threatening our client Mr. Grey [sic]" and, according to the complaint, "referred to Plaintiff Emre Umar,  and Plaintiff CMC, as 'to have some political connections, and access to prisoners and money.'"  (*Id.* at ¶ 45.)[4]  Maria immediately e-mailed Miller to clarify that Emre was not a threat to Douglas.  (*Id.* at ¶ 45.)  On June 4, 2007, Miller advised Maria that the Grays hired him and ISA because Emre was a threat to them.  (*Id.* at ¶ 47.)  Miller also informed Maria that he had her family under twenty four-hour surveillance and demanded that Maria have another conversation with him.  (*Id.* at ¶ 47.)  When Maria refused, Miller then threatened to interfere with plaintiffs' business and contracts.  (*Id.* at ¶ 48.)

---

[4] A certified copy of the e-mail chain referred to in paragraph 45 of the complaint does not mention CMC at all, instead stating only that "this man [Emre] seems to have some political connections, and access to prisoners and money."  (Defs. Ex. A-1 at 2.)  The court may consider this document because plaintiff CMC's claims are based on it.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").  Plaintiffs have not disputed the exhibit's authenticity.  Other than this inaccurate statement of fact in paragraph 45 and a reference to a vague statement by Douglas to Maria that Karen had "found the company" in paragraph 23, CMC is not otherwise mentioned in the complaint.

On May 25, 2007, the burglar alarm activated during a break-in of the Umars' home.  (*Id.* at ¶ 42.)  On another occasion, a vehicle followed Emre to his home and then sped away.  (*Id.* at ¶ 51.)  On June 13 and June 18, 2007, additional break-ins occurred at the Umars' home.  (*Id.* at ¶¶ 52, 55.)  A Caucasian male matching Miller's description was seen exiting the property on both June 13 and June 18, joined by an unidentified woman on the latter date.  (*Id.* at ¶¶ 52, 55.)  Plaintiffs allege that Miller, ISA agents or the Doe defendants hired or employed by ISA, broke into their home on these occasions.  (*Id.* at ¶¶ 43, 53, 57.)  During the break-ins, Miller, ISA or the Doe defendants "planted, and later retrieved, a radio frequency transmitter device," "tampered with telephone lines and the alarm system," and "illegally intercepted and re-transmitted Plaintiffs' private conversations, telephonic communications, and electronic communications and transmissions."  (*Id.* at ¶ 58.)  After the June 18 break-in, the Umars reported the incident to the police.  (*Id.* at ¶ 56.)  The police investigated the incidents, and on June 21, 2007, Miller informed the police that he was conducting a background check of Emre.  (*Id.* at ¶ 59.)  Miller denied conducting any surveillance.  (*Id.* at ¶ 59.)

Plaintiffs filed their complaint on July 11, 2007.  Douglas, Miller and ISA filed a motion to dismiss.  Karen made an appearance through her attorney and waived service of summons.  She then filed her separate motion to dismiss and joined the other defendants' motion to dismiss.

## II.  Discussion

### A.  Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

All defendants move to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) because of deficiencies in the allegations of the complaint.  Plaintiffs allege both federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under § 1332, as well

as supplemental jurisdiction under § 1367.  (Compl. ¶ 1.)  Because the court has federal question subject matter jurisdiction, I will deny the motion.

In their motion, defendants expressly dispute only the court's diversity jurisdiction.  Under § 1332, plaintiffs must allege complete diversity of citizenship between plaintiffs and defendants and an amount in controversy in excess of $75,000.  Defendants challenge plaintiffs' allegations both of the citizenship of the parties and of the amount in controversy.  When a defendant challenges the existence of diversity of citizenship, the plaintiff bears the burden of proving complete diversity. *See Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995) ("A party who invokes the jurisdiction of the federal courts has the burden of demonstrating the court's jurisdiction." (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Carden v. Arkmona Assocs.*, 494 U.S. 185, 187 (1992) ("Since its enactment, we have interpreted the diversity statute to require 'complete diversity' of citizenship." (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)).  Despite the defendants' contention, paragraphs one through seven of the complaint establish complete diversity of the identified parties based on specific allegations of the parties' residencies.[5]

Plaintiffs have, however, failed to properly plead the amount in controversy.  If the existence of the jurisdictional amount in controversy is disputed, the plaintiff bears the burden of proof on the issue, although the burden is not a heavy one.  *McNutt*, 298 U.S. at 189.  The courts "generally accept a party's good faith allegation of the amount in controversy, but where a defendant or the

---

[5] Defendants do not dispute the factual assertion that all identified plaintiffs have resided and will reside in Pennsylvania while all identified defendants have resided and will reside in Illinois.  (*See* Compl. ¶¶ 1-7.)  Instead, defendants argue that "the Complaint is devoid of any factual allegations as to the residence of the any of the [sic] parties," (Defs.' Mot. Dismiss 6), which is plainly wrong and the allegation to the contrary is clearly frivolous.

court challenges the plaintiff's allegations regarding the amount in question, the plaintiff who seeks the assistance of the federal courts must produce sufficient evidence to justify its claims." *Columbia Gas Transmission Corp.*, 62 F.3d at 541.  Here, however, plaintiffs do not allege any amount in controversy, arguing only that their citation to § 1332 satisfies the pleading requirements because § 1332 contains the $75,000 amount in controversy requirement.  Plaintiffs cite no cases to support this argument, and the court disagrees.  While a good faith allegation that the amount in controversy exceeds the $75,000 requirement is sufficient absent a challenge, a complete lack of any allegation of amount in controversy is not.  *See McNutt*, 298 U.S. at 189 (holding that plaintiff "must allege in his pleading the *facts* essential to show jurisdiction" (emphasis added)).  Because plaintiffs fail to allege a factual amount in controversy in excess of $75,000, the court lacks diversity jurisdiction, even though the court is quite certain that plaintiffs will properly allege the jurisdictional amount in their amended complaint.  The court will grant plaintiffs leave to amend their complaint to comply with jurisdictional requirements.

As the complaint currently fails to properly allege diversity jurisdiction, the court next turns to federal question jurisdiction under 28 U.S.C. § 1331.[6]  Count III of the complaint alleges a cause of action under the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2511 *et seq.* ("ECPA").  Although defendants do not expressly challenge the court's federal question jurisdiction

---

[6] Section 1331 provides:  "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

in their Rule 12(b)(1) motion, the court must address the issue to ensure that it has jurisdiction.[7]  The

Third Circuit has held:

> A district court can grant a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on the legal insufficiency of a claim.  But dismissal is proper only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous."

*Kehr Packages*, 926 F.2d at 1408-1409 (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

The court concludes that plaintiffs' allegations, if true, provide the court with subject matter

jurisdiction under § 1331.  Plaintiffs allege that defendants violated the ECPA by "placing a

transmitter device in Plaintiffs' home to intercept wire, oral, or electronic communications.  (Compl.

¶¶ 81-82.)  More specifically, "[d]uring the break-ins and trespasses" defendants or their agents

"planted, and later retrieved, a radio frequency transmitter device in home of Plaintiffs Maria and

Emre Umar . . . through which Defendants illegally intercepted and re-transmitted Plaintiffs' private

conversation, telephonic communications and electronic communications and transmissions."

(Compl. ¶ 58.)[8]  These claims of wiretapping are consistent with the other allegations of unlawful

trespass and surveillance, and do not appear to be immaterial, made solely for the purpose of

---

[7] Defendants have not stated the grounds to their jurisdictional challenge to the court's federal question jurisdiction and have not offered evidence outside of the complaint to challenge that jurisdiction, so the court interprets their general Rule 12(b)(1) motion as a facial attack on the complaint's allegation of federal question jurisdiction.  When a defendant facially attacks the complaint's allegation of jurisdictional facts, the "court must consider the allegations of the complaint as true," similar to a Rule 12(b)(6) motion.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977).  The plaintiff bears the burden of persuasion, although that burden is light.  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Dugan v. Coastal Indus., Inc.*, 96 F. Supp. 2d 481, 482-83 (E.D. Pa. 2000).

[8] For purposes of the present motion, the court has not considered additional factual allegations included in plaintiffs' response to defendants' motion to dismiss.

obtaining federal jurisdiction, or wholly insubstantial.  The court thus concludes that it has federal question jurisdiction over Count III.

Plaintiffs have also made numerous claims under state law.  Because the court's jurisdiction is based on a federal question, the only basis for the court's jurisdiction over these state law claims is that of supplemental jurisdiction under 28 U.S.C. § 1367.[9]  The court may exercise supplemental jurisdiction under § 1367 when

> the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that derive from a common nucleus of operative fact, such that the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."

*City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 164-65 (1997) (some internal quotation marks omitted) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).  In the Third Circuit, a district court may exercise supplemental jurisdiction only if three requirements are met: (1) the court has subject matter jurisdiction over the federal claim; (2) the state and federal claims derive from a common nucleus of operative facts; and (3) the claims are such that they would ordinarily be expected to be tried in one judicial proceeding.  *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995); *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995).

Plaintiffs allege eight state law claims in addition to their federal claim (Count III).  Counts I, II, V, VI, VII, VIII and IX allege the torts of invasion of privacy, trespass, intentional infliction of

---

[9]  Title 28 U.S.C. § 1367(a) establishes that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

emotional distress, negligence, negligent hiring and supervision, commercial disparagement, and civil conspiracy.  These claims arise out of defendants' alleged private investigation and surveillance of the Umars, invasion of Umars' home, defendants' activities in hiring others to carry out these actions, and defendants' statements about plaintiffs during their investigation.  These claims arise from a common nucleus of operative facts that also give rise to the federal claim for the interception of electronic and telephonic communications.  Furthermore, claims arising from the investigatory and surveillance activities would normally be tried in one proceeding, as they involve the same parties, witnesses, time frame, locations, and overlapping activities.  Thus, the court has supplemental jurisdiction over these claims under § 1367.

Similarly, Count IV alleges interception of wire, oral, or electronic communications in violation of state law.  In addition to the reasons stated above for the tort counts, the court may clearly exercise supplemental jurisdiction over this claim because it is "merely [an] alternative theor[y] of recovery based on the same acts" that give rise to the federal claim.  *See Lyon*, 45 F.3d at 61 (citing *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 479 (3d Cir. 1979)).

In sum, the court  has subject matter jurisdiction based on federal question jurisdiction over Count III, which alleges violations of the ECPA, and supplemental jurisdiction over the state law claims in Counts I, II, and IV through IX.  Thus, defendants' Rule 12(b)(1) motion is denied.[10]

**B.    Karen's Motion to Dismiss for Lack of Personal Jurisdiction**

Karen moves to dismiss the case against her pursuant to Rule 12(b)(2) on the basis that the court lacks personal jurisdiction over her.  In reviewing a motion to dismiss under Rule 12(b)(2), the

---

[10] As noted above, plaintiffs are granted leave to amend their complaint to assert diversity jurisdiction.

court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).  Nonetheless, a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66-67 n.9 (3d Cir. 1984).  Furthermore, once a defendant has raised a personal jurisdictional defense, the burden shifts to the plaintiff to prove that the relevant jurisdictional requirements are met.  *See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).  Accordingly, to defeat a defendant's 12(b)(2) motion where the defendant has produced an affidavit or other competent evidence that asserts facts contrary to the jurisdictional allegations of the complaint, the burden is on the plaintiff to make a prima facie showing through sworn affidavits or other competent evidence that the jurisdictional facts exist.  *See, e.g., N. Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990); *Harris v. Trans Union, LLC*, 197 F. Supp. 2d 200, 203 (E.D. Pa. 2002); *In re Arthur Treacher's Franchise Litig.*, 92 F.R.D. 398, 410 n.11 (E.D. Pa. 1981).  Although the plaintiff cannot rely solely on the bare pleadings to meet this burden, *see Time Share Vacation Club*, 735 F.2d at 66-67 n.9, whatever the form of the submissions, the court must accept disputed facts in light most favorable to the plaintiff, *see Carteret*, 954 F.2d at 142 n.1.

A district court must apply the law of the forum state to determine whether personal jurisdiction over a nonresident is proper. Fed. R. Civ. P. 4(k).  Pennsylvania's long-arm statute is coextensive with the limits of the Federal Constitution; thus, the court may exercise personal jurisdiction over defendants so long as it does not violate the Constitution.  42 Pa. Cons. Stat. §

5322(b);[11] *see also Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150

(3d Cir. 1995); *Mellon Bank (East) PSFS*, 960 F.2d at 1221.  "[W]here the plaintiff's cause of action

is related to or arises out of the defendant's contacts with the forum, the court is said to exercise

'specific jurisdiction.'"  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (quoting

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).[12]  Plaintiffs

contend that the court may assert specific personal jurisdiction over Karen because she both directly

and through her agents committed intentional torts against plaintiffs while plaintiffs were in

---

[11] In relevant part, section 5332(a) also provides jurisdiction over a person "who acts directly or by an agent" to cause "harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth."

[12] In federal court, the exercise of personal jurisdiction must satisfy the requirements of the Due Process Clause of the Fifth and Fourteenth Amendments.  *Pinker*, 292 F.3d at 368-69; *see also Pennoyer v. Neff*, 95 U.S. 714, 733 (1877).  The courts generally use a two-part test to determine whether they may assert specific jurisdiction over a nonresident.  *See IMO Indus.*, 155 F.3d at 259; *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998).  First, the defendant must have constitutionally sufficient 'minimum contacts' with the forum state.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Such contacts require that the defendant "purposefully availed [herself] of the privilege of conducting activities within the forum state."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  To make this determination, courts question whether "the defendant's conduct and connection with the forum State are such that [s]he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Second, the court must make a discretionary determination that subjecting the defendant to the court's jurisdiction will "comport with 'traditional notions of fair play and substantial justice.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985).  In this case, plaintiffs have argued that Karen meets the more specific *Calder* effects test of specific jurisdiction, as discussed next in text, so the court's examination of minimum contacts is curtailed.  *See Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (citing *IMO Indus.*, 155 F.3d at 259) ("If a plaintiff satisfies these three elements, . . . the plaintiff can demonstrate a court's jurisdiction over a defendant even when the defendant's 'contacts with the forum alone . . . are far too small to comport with the requirements of due process' under our traditional analysis.").  In addition, Karen has not argued that answering this suit would not conform to traditional notions of fair play and substantial justice.  Because the defendant bears the burden of showing that the exercise of jurisdiction does not comport with that standard, the court need not consider the second prong at this time.  *See Mellon Bank*, 960 F.3d at 1226-27.

Pennsylvania.  When a plaintiff alleges an intentional tort as the basis for the claims, the courts will find personal jurisdiction if the three requirements of the "*Calder* effects test" are met:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.[13]

*IMO Indus.*, 155 F.3d at 265-66 (footnote omitted) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). As noted above, under the personal jurisdiction standard of review, which applies to the court's exercise of jurisdiction based on the *Calder* effects test, once the defendant produces competent evidence contrary to the complaint's jurisdictional allegations, the plaintiff bears the burden of coming forward with prima facie evidence to dispute defendants' factual challenge.

According to plaintiffs' argument, Karen committed the intentional torts of invasion of privacy, trespass, intentional infliction of emotional distress, commercial disparagement, civil conspiracy, and torts resulting from the intentional violation of federal and state statutes; plaintiffs felt the brunt of the harm at their residence in Pennsylvania; and Karen expressly aimed her conduct into Pennsylvania.  Plaintiffs advance alternative theories to support this contention:  (1) that Karen personally invaded Maria's privacy by placing two telephone calls to Maria; or (2) that Karen hired Miller and ISA to commit the other intentional torts on her behalf in Pennsylvania.  Karen retorts that she neither committed an intentional tort, nor expressly aimed any tortious conduct at Pennsylvania.  She contends that the phone calls are legally insufficient to constitute an intentional

---

[13] "[T]he plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."  *IMO Indus.*, 155 F.3d at 266.

tort and that plaintiffs have failed to meet their evidentiary burden after she produced a sworn affidavit specifically refuting the complaint's allegations that she hired Miller and ISA.

The court agrees with Karen that the allegations stemming from the telephone calls made by Karen are insufficient to support personal jurisdiction because they do not constitute an intentional tort and Pennsylvania was not the focal point of her alleged tortious activities.[14]   Some case law supports the argument that one phone call may be sufficient to show invasion of privacy because of the its harassing nature.  *See Diaz v. D.L. Recovery Corp.*, 486 F. Supp. 2d 474, 479 (E.D. Pa. 2007); *see also Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("[T]elephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction.").  Here, however, the single call into Pennsylvania is insufficient. On March 4, 2007, Karen and Douglas together placed a call to Maria at her home in Pennsylvania to demand that she stop calling Douglas and leave them alone.  (Compl. ¶ 21.)[15]  Karen states in her affidavit that it was Maria who returned Douglas's call and that  in that return call Maria spoke with Karen and Douglas 10 minutes.  (Karen Decl. ¶ 19.)  Even assuming that the call was initially completed by Karen, the allegations do not suggest that Karen harassed Maria during that

---

[14] The present dispute about the court's jurisdiction over Karen raises a situation where the court must necessarily consider the merits of the allegations.  "There are situations . . . where 'the question of the district court's jurisdiction [is] entwined with the ultimate question on the merits.'"  *Patterson by Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir.1990) (citations omitted).  In such circumstances, it may be necessary for the district court "to proceed to a decision which impacts on the merits."  *Id.*; *see also Land v. Dollar*, 330 U.S. 731, 739 (1947) (finding that the district court had jurisdiction to determine its jurisdiction by proceeding to a decision on the merits).

[15] On March 1, 2007, after discovering the affair between Douglas and Maria, Karen called Maria on Maria's mobile phone while Maria was in Milwaukee, Wisconsin.  (Compl. ¶¶ 14-18.)  This call was not directed into Pennsylvania and did not make Pennsylvania the focal point of the harm.

14

conversation to the extent found in *Diaz v. D.L. Recovery Corp.*, the only case to sustain a cause of action for invasion of privacy based on one phone call. *See* 486 F. Supp. 2d at 476, 479 (finding that the "allegations of the Complaint suggest that Defendants' intrusion upon their solitude was, from the perspective of a reasonable person, 'highly offensive' . . . by virtue of the outrageous character" of the phone conversation in which defendant threatened that the plaintiff's baby might have to sleep on the floor and questioned whether the plaintiff was afraid of getting AIDS because the father of her children had five other girlfriends). Furthermore, by plaintiffs' own characterization, Karen's only call into Pennsylvania was pursuant to Douglas's "ruse" to trick Karen and cover up the extent of his infidelity. (Compl. ¶¶ 19, 21.) Thus, Karen did not have the intent required for the intentional tort of invasion of privacy. Even taken in light most favorable to plaintiffs, the phone calls simply do not constitute an invasion of privacy and cannot support jurisdiction over Karen under the *Calder* effects test.

Consequently, the only ground to assert personal jurisdiction over Karen under the *Calder* effects test would be the allegation that she hired Miller and ISA to commit intentional torts on her behalf in Pennsylvania. *See Grand Entm't Group*, 988 F.2d at 483 ("Activities of a party's agent may count toward the minimum contacts necessary to support jurisdiction."). To establish the validity of its exercise of jurisdiction, the court must decide whether plaintiffs have established a prima facie case that Karen hired Miller or ISA to commit an intentional tort in Pennsylvania.

Plaintiffs' allegations that Karen hired Miller and ISA stem principally from statements by Douglas and Miller to Maria and by Miller to the police investigating the break-ins. As alleged in the complaint, on May 19, 2007, Douglas and Miller called Maria and "told her that Defendant Karen Gray had hired Defendant James Miller as a private investigator to conduct a background

15

check on Plaintiff Emre Umar." (Compl. ¶ 35; *see also id.* at ¶ 37 (alleging that Miller called Maria and "stated that he and Defendants Douglas and Karen Gray were performing a background check on Plaintiff Emre Umar"); *id.* at ¶ 47 (alleging that "[o]n Monday, June 4, 2007, Defendant Miller advised Plaintiff Maria Umar that Defendants Douglas and Karen Gray had hired him and Defendant Investigative Services Agency, Inc.").) Karen refuted these factual allegations in her sworn affidavit. (Karen Decl. ¶ 20.)[16]  In response, plaintiffs produced police reports to support their allegation that Karen hired Miller and ISA.  (*See* Pls.' Ex. B, C.)[17]  In the first police report, dated June 16, 2007, the authoring police officer stated that Maria and Emre told him that Douglas told Maria that Karen hired Miller to follow Emre and Maria.  (Pls.' Ex. B.)  This report contains no credible evidence because it is not based on first-hand knowledge.  *See Green Keepers, Inc. v. Softspikes, Inc.*, No. 98-2255, 1998 WL 717355, at *3 (E.D. Pa. Sept. 23, 1998) (concluding that "where the affidavits or other evidence submitted by the plaintiffs is inadmissible, incompetent, or untrustworthy, such as when an affidavit is not based on personal knowledge but instead inadmissible hearsay, the evidence "fails to satisfy plaintiff's burden of showing that personal jurisdiction is proper") (citing *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 537 n.6 (3d Cir. 1994)).  In the second police report, dated June 21, 2007, the police investigator stated that Miller told him that the

---

[16] Her declaration states: "I was not involved in the decision to retain a private investigator, the selection of the private investigator, the hiring of Jim Miller or Investigative Services Agency, Inc., or the issuance of any instructions or requests of either Mr. Miller or his company."  (Karen Decl. ¶ 20.)  The e-mail chain submitted by Miller also labeled Mr. Gray as "our client." (Defs.' Ex. A-1 at 2.)

[17] Plaintiffs third submission, Maria's verification of the complaint, is not considered here because it adds nothing to the factual allegations contained therein.  *See Time Share Vacation Club*, 735 F.2d at 68 (concluding that "mere affidavits which parrot and do no more than restate the plaintiff's allegations without identification of particular defendants and without factual content do not end the inquiry").

Grays "are no longer clients of the investigative firm." (Pls.' Ex. C.) The credibility of this report is similarly questionable. More importantly, while this report suggests a possible inference that Karen and Douglas together hired ISA, the court can draw no inference that Karen hired ISA as her agent to commit intentional torts against the Umars in Pennsylvania. Based on the evidence before the court, plaintiffs have therefore failed to produce sufficient competent evidence that Karen hired Miller or ISA or instructed them in any way to commit the alleged intentional torts against the Umars. Thus, the court cannot conclude for the jurisdictional determination pursuant to the *Calder* effects test that she engaged in any intentional tort or expressly directed an intentional tort into Pennsylvania.

As an alternative to dismissing Karen as a party to this lawsuit, plaintiffs request jurisdictional discovery. (Pls.' Surreply 6 n.2.) Because plaintiffs' claim is not clearly frivolous, the court will allow specific, reasonable jurisdictional discovery for a period of 45 days, should plaintiffs choose to pursue this option. *See Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction . . . , courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)); *id.* ("If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' . . ., the plaintiff's right to conduct jurisdictional discovery should be sustained." (quoting *Mellon Bank*, 960 F.2d at 1223)).[18] The court will presently deny Karen's

---

[18] Because the court concludes that it cannot yet maintain personal jurisdiction over Karen, it will not address her Rule 12(b)(6) motion at this time. Where plaintiffs or defendants have referred to the Grays, they court will reach its decision only for Douglas. If the court later

motion to dismiss pursuant to Rule 12(b)(2), grant plaintiffs leave to conduct specific jurisdictional discovery to cure the jurisdictional defects noted herein, and grant Karen leave to refile her motion to dismiss pursuant to Rule 12(b)(2) after plaintiffs have conducted such discovery.

### C.    Defendants' Motion to Strike the Complaint under Rule 8(a)(2)

Defendants move to strike the complaint under Rule 8(a)(2) because it fails to comply with the requirement of a short and plain statement of the claim.  Plaintiff contends that the complaint contains too detailed a narrative, conclusory allegations, and "group pleading."  Although the complaint is a narrative and at times repetitive, dismissal would be too harsh a remedy in this case, where plaintiffs have used 135 short, numbered paragraphs over twenty-five pages to state their nine claims.  Precedent suggests that a more substantial abuse is necessary to strike the complaint.  *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702-03 (3d Cir. 1996) ("The second amended complaint is unnecessarily complicated and verbose.  The text of the complaint rambles for more than 600 paragraphs and 240 pages, including a 50-plus page 'overview' of the alleged wrongful conduct."); *see also Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("Prolixity is a bane of the legal profession but a poor ground for rejecting potentially meritorious claims.").  Furthermore, the court can and will ignore any conclusory pleadings.  Finally, the "group pleading" in this case does not concern the court because the complaint alleges conspiracy or agency theory and because the court was able to identify the relevant plaintiffs and defendants for each claim.  The court will, therefore, deny defendants' motion to strike the complaint under Rule 8(a)(2).

---

concludes it has jurisdiction over Karen, it will amend this memorandum and order or issue a new memorandum and order as appropriate, upon request by Karen.

**D.      Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted Under Rule 12(b)(6)**

Generally, when deciding whether to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is testing the sufficiency of a complaint. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citation omitted).  The court must accept as true all well-pled allegations of fact in the complaint and any reasonable inferences that may be drawn therefrom to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  A plaintiff must show a "reasonably founded hope" of success, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (internal citations and quotation marks omitted), although "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted).  "The complaint will be deemed to have alleged sufficient facts if it adequately puts the defendants on notice of the essential elements of the plaintiff[']s] cause of action." *Nami*, 82 F.3d at 65.

**1.      Invasion of Privacy–Intrusion Upon Seclusion**

Count I of the complaint alleges invasion of privacy through intrusion upon plaintiffs' seclusion.  The parties agree that Pennsylvania has adopted the tort of intrusion upon seclusion as set forth in the Restatement (Second) of Torts § 652B and its comments.[19]  *See, e.g., Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 259-60 (3d Cir. 2004) (citing *Harris v. Easton Publ'g Co.*, 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984)); *Marks v. Bell Tel. Co.*, 331 A.2d 424, 430 (Pa. 1975); *Vogel v. W. T. Grant Co.*, 327 A.2d 133, 135-137 (Pa. 1974).  Under the tort of intrusion upon seclusion:

---

[19] The parties do not dispute that Pennsylvania law applies to the state law claims over which the court has supplemental jurisdiction.

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B.  Intrusion upon seclusion requires that the plaintiff has a reasonable expectation of privacy.  *See, e.g.*, *Kline*, 386 F.3d at 260.[20]

In this case, plaintiffs allege that (1) Douglas and Miller placed numerous calls to Maria (Compl. ¶¶ 17, 19, 21, 23, 24, 26, 28, 32, 37, 38, 47); (2) Miller, ISA, and the Doe defendants broke into the plaintiffs' home on numerous occasions (*id.* at ¶¶ 52, 53, 55, 57); and (3) Miller, ISA and the Doe defendants secretly conducted surveillance of plaintiffs, planted a radio frequency transmitter device in plaintiffs' home, tampered with plaintiffs' telephone lines and alarm system, and illegally intercepted and re-transmitted plaintiffs' telephone conversations and other electronic communications (*id.* at ¶¶ 41, 58).[21]

Defendants argue that the repeated phone calls cannot raise liability for invasion of privacy. The Restatement provides that "when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff . . . [such that it] becomes a substantial burden to his existence, [plaintiff's] privacy is invaded." Restatement (Second) of Torts § 652B cmt. d.  Thus, the allegations state a claim for invasion of privacy based on Douglas's and Miller's

---

[20] For this reason, the court holds that CMC is not a proper plaintiff to Count I, as only individuals may maintain a claim for intrusion upon seclusion.  *See United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (holding that entities like corporations have no right to personal privacy).

[21] Plaintiffs also base their claim on the allegations that Miller, ISA and the Doe defendants performed a background check (Compl. ¶ 40) and that an unidentified vehicle followed Emre (*id.* at ¶ 51).

multiple phone calls.  Whether Douglas's and Miller's numerous calls amount to a course of hounding or a substantial burden is a factual dispute that the court will not resolve at this time.

Defendants next argue that the trespass allegations against Miller, ISA and the Doe defendants are unsubstantiated suspicions and that the eavesdropping allegations against them allege only preparation and not intentional overhearing of a private conversation.  The court first notes that for the purposes of a Rule 12(b)(6) motion, the court must take plaintiffs allegations as true; whether the factual allegations are substantiated is reserved for later proceedings.  Regarding the substance of the allegations, plaintiffs note that the alleged trespass and surveillance of the Umars' home are identified as torts in comment b to section 652B.[22]  Pennsylvania law, however, diverges slightly from section 652B.  In *Marks v. Bell Telephone Co.*, 331 A.2d 424, 430-31 (Pa. 1975), the Pennsylvania Supreme Court held that "a basic element of this form of the tort [of intrusion upon seclusion] is the intentional overhearing by one not intended to be a party to the communication of the contents of a private conversation.  In the absence of an overhearing of a private communication, this tort has not been committed."  Thus, plaintiffs must eventually prove that a person listened to

---

[22] Section 652B, comment b, states:

> The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home.  It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires.  It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents.  The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.

the allegedly intercepted conversations.  For the purposes of this Rule 12(b)(6) motion, however, the complaint alleges a pattern of facts from which the court can reasonably draw the inference that one or more of the defendants listened to plaintiffs' private conversations after interception by the radio transmitter, thus intruding on plaintiffs' seclusion.[23]   Overall, the complaint sufficiently alleges invasion of privacy by Miller, ISA and the Doe defendants for the home invasion and interception of private communications.[24]

Finally, Douglas argues that he is not linked to the trespass and eavesdropping allegations. Drawing all inferences in favor of the plaintiffs, the complaint alleges a cause of action against Douglas for invasion of privacy based on the allegation that he hired Miller and ISA to enter the Umars' home, tap their phones, and listen to their private communications.  The court will, thus, deny defendants' motion to dismiss as to Count I.

---

[23] The complaint does not expressly allege that a specific defendant listened to plaintiffs private conversations.  Defendants assert that *Marks*, which cites *LeCrone v. Ohio Bell Tel. Co.*, 201 N.E.2d 533 (1963), requires an allegation that defendants listened to the recorded conversations.  The opinions in both *Marks* and *LeCrone* were at later stages of litigation (respectively, an appeal from a refusal to award damages after a finding of liability and an appeal from a judgment granting a motion for directed verdict).  The court will allow plaintiffs the opportunity to discover if defendants actually listened to plaintiffs' private conversations.

[24] Citing Restatement section 652B, comment c, defendants also argue that conducting a background check of public information and following Emre in a car on a public street cannot constitute an intrusion on seclusion.  As plaintiffs argue, however, the entire complaint shows "an escalating pattern and practice of intimidation, harassment and invasion of privacy."  (Pls.' Resp. 18.)  *See Wolfson* v. Lewis, 924 F. Supp. 1413, 1420 (E.D. Pa. 1996) (concluding that "[c]onduct that amounts to a persistent course of hounding, harassment and unreasonable surveillance, even if conducted in a public or semi-public place, may nevertheless rise to the level of invasion of privacy based on intrusion upon seclusion"); *DeAngelo v. Fortney*, 515 A.2d 594, 596 (Pa. Super. Ct. 1986) (refusing to recognize a tort for harassment in public where facts amounting to harassment in public support a claim for invasion of privacy).

2.      **Trespass**

Count II of the complaint alleges trespass.   Pennsylvania law defines trespass as "unprivileged, intentional intrusion upon land in possession of another." *Kopka v. Bell Tel. Co.*, 91 A.2d 232, 235 (Pa. 1952); *see also* Restatement (Second) of Torts § 163.[25]  Furthermore, "one who authorizes or directs another to commit an act which constitutes a trespass to another's land is himself liable as a trespasser to the same extent as if the trespass were committed directly by himself, and this is true even though the authority or direction be given to one who is an independent contractor." *Kopka*, 91 A.2d at 235; *see also* Restatement (Second) of Torts § 163.

Defendants argue that plaintiffs' complaint fails to allege facts supporting a cause of action in trespass.  In the complaint, plaintiffs allege that Miller, ISA or the Doe defendants entered into plaintiffs' home on May 25, June 13, and June 18, 2007.  (Compl. ¶¶ 40, 41, 52, 53, 55, 57, 58.) Plaintiffs allege that Douglas hired Miller and ISA to enter onto the Umars' property.  (*Id.* at ¶¶ 35, 43, 47.)  These allegations are sufficient to survive a motion to dismiss under Pennsylvania trespass law.  Therefore, the court will deny defendants' motion to dismiss Count II.[26]

---

[25] Section 163 provides:

> One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest.

[26] CMC is again not a proper plaintiff to this Count, as none of the allegations suggest that CMC possessed the property onto which defendants allegedly trespassed.  *See Kopka*, 91 A.2d at 235.

23

### 3.   Intentional Unauthorized Interception of Wire, Oral, or Electronic Communications Under Federal Law

Count III of the complaint alleges violation of the ECPA.  The ECPA provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, . . . which engaged in that violation, such relief as may be appropriate."  18 U.S.C. § 2520.  A violation occurs when a person:

> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
> (b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when . . . (ii) such device transmits communications by radio, or interferes with the transmission of such communication . . . .

18 U.S.C. § 2511.  Defendants move to dismiss this Count for factual insufficiency because plaintiffs "failed to identify any fact that would leave [sic] a reasonable trier of fact to believe that any wire, oral, or electronic communication was intercepted."  (Defs.' Mot. Dismiss 15.)

Plaintiffs allege that Douglas hired Miller, ISA agents, or the Doe defendants to place a "radio frequency transmitter device" in plaintiffs' home, "through which Defendants illegally intercepted and re-transmitted Plaintiffs' private conversations, telephonic communications and electronic communications and transmissions."  (Compl. ¶¶ 43, 58.)  Thus, according to the complaint, defendants "intercepted . . . wire, oral, and/or electronic communications without prior consent."  (*Id.* at ¶ 81.)  These allegations state a cause of action against Miller and ISA for interception of or procurement of another person to intercept wire, oral or electronic communications and for use or procurement of another person to use a device, the radio transmitter, to intercept such

communications in violation of § 2511.  The complaint expressly alleges that Douglas is liable because he procured other persons, i.e., Miller, ISA or the Doe defendants, to conduct these activities.  *See Flowers v. Tandy*, 773 F.2d 585, 590 (4th Cir. 1985) (holding that "the procuring language was intended to reach the principal who enlists the aid of an agent to do the actual interception") (citing *Kratz v. Kratz*, 477 F. Supp. 463, 476 n.30 (E.D. Pa. 1979)).[27]  Defendants cite no case law that suggests the activities alleged in the complaint do not state a cause of action.  Therefore, the court will deny defendants' motion to dismiss as to Count III.[28]

### 4. Intentional Unauthorized Interception of Wire, Oral, or Electronic Communications Under Pennsylvania Law

In Count IV, plaintiffs allege liability under 18 Pa. Cons. Stat. § 5725 for violation of 18 Pa. Cons. Stat. § 5703.  Similarly to the ECPA, § 5703 provides that "a person is guilty of a felony of the third degree if he:  (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication."  A victim of the prohibited activities under § 5703 has "a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication."  18 Pa. Cons. Stat. § 5725.  Under § 5725, a plaintiff must allege:

> (1) that he engaged in [an oral] communication; (2) that he possessed an expectation that the communication would not be intercepted; (3) that his expectation was justifiable under the circumstances; and (4) that the defendant attempted to, or successfully intercepted the communication, or encouraged another to do so.

---

[27]  Although both parties have included additional factual pleadings in their briefs on the motions, the court will rely solely on the facts alleged in the complaint for the present motion to dismiss under Rule 12(b)(6).

[28]  CMC is again not a proper plaintiff to this Count, as none of the allegations suggest that CMC's communications were intercepted.

*Kline*, 386 F.3d at 257 (quoting *Agnew v. Dupler*, 717 A.2d 519, 522 (Pa. 1998)).  Vicarious liability attaches under Pennsylvania law to these claims.  *See Care v. Reading Hosp.*, 448 F. Supp. 2d 657, 660 (E.D. Pa. 2006).

Because the federal and state laws are substantively the same, the facts supporting this Count are the same as those discussed above with respect to the ECPA claim.  Plaintiffs had an expectation of privacy in their home and with respect to communications made in their home.  Miller, ISA or the Doe defendants allegedly intercepted wire, electronic or oral communications through use of a radio transmitter device.  (Compl. ¶ 58, 88, 89.)  Douglas allegedly hired them to do so.  (*Id.*)  These allegations are sufficient to survive the motion to dismiss, and defendants suggest no additional grounds on which to dismiss this Count.  The court will deny defendants' motion to dismiss Count IV.[29]

### 5.      Intentional Infliction of Emotional Distress

Count V alleges liability for intentional infliction of emotional distress, and defendants move to dismiss this claim.  Although the Pennsylvania Supreme Court has never expressly recognized the tort of intentional infliction of emotional distress, the Third Circuit has held that the Pennsylvania Supreme Court would follow the Restatement (Second) of Torts § 46 approach.  *Pavlik v. Lane Limited/Tobacco Exps. Int'l*, 135 F.3d 876, 890 (3d Cir. 1998); *see also Motheral v. Burkhart*, 583 A.2d 1180, 1188 (Pa. Super. Ct. 1990)*, superseded on other grounds by statute as recognized in*

---

[29] CMC is again not a proper plaintiff to this Count, as none of the allegations suggest that CMC's communications were intercepted.

26

*Matukonis v. Trainer*, 657 A.2d 1314 (Pa. Super. Ct. 1995).[30]  The Restatement explains the tort as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts § 46(1).  Under § 46, a plaintiff must prove four elements:  the conduct must be extreme and outrageous, it must be intentional or reckless, it must cause emotional distress, and the distress must be severe.  *See Williams*, 875 F.2d at 52.

Defendants argue that plaintiffs' claim for intentional infliction of emotional distress fails as a matter of law because the conduct alleged in the complaint is not sufficiently "outrageous."  As a threshold matter, the court determines whether the defendants' alleged conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.  *See Cox v. Keystone Carbon Co.*, 861 F.2d 390, 295 (3d Cir. 1988); *Johnson v. Caparelli*, 625 A.2d 668, 671 (Pa. Super. Ct. 1993).  However, "[w]here reasonable persons may differ, it is for the jury to determine whether the conduct is sufficiently extreme and outrageous so as to result in liability."  *Motheral*, 583 A.2d at 1188.

"Pennsylvania courts have been 'chary to declare conduct 'outrageous' so as to permit recovery.'"  *See Clark*, 890 F.2d at 623 (citations omitted).  Generally, it is insufficient "that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle plaintiff to punitive damages for another tort."  *Hoy v. Angelone*, 720

---

[30] The Pennsylvania Supreme Court has cited § 46 of the Restatement (Second) of Torts as setting forth the minimum requirements to sustain a claim, were such a claim to be held cognizable in Pennsylvania.  *See Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000).  Pennsylvania courts, however, require "competent medical evidence of causation and severity."  *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989).

A.2d 745, 754 (Pa. 1998) (reviewing Pennsylvania case law to conclude that liability adheres only when the conduct "is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." (internal quotations and citations omitted)).

Reading the complaint in the light most favorable to plaintiffs, the court is unwilling to determine on the face of the complaint that plaintiffs do not state a claim for intentional infliction of emotional distress.  With further development of the record, it may become abundantly clear that these allegations do not state a cause of action; however, the court will not act prematurely in this determination because the complaint currently alleges activities that may potentially give rise to liability for intentional infliction of emotional distress, including repeated telephone harassment, multiple trespasses of the home, illegal electronic surveillance, misrepresentations about Miller's and ISA's surveillance activities, following Emre in a car, refusing to cease the investigation, and threatening plaintiffs' livelihood.  (*E.g.*, Compl. ¶¶ 95-96.)[31]  Once discovery is conducted, the court will, if asked on summary judgment or at another appropriate stage, consider whether plaintiffs' claims for intentional infliction of emotional distress are sufficiently "outrageous" to reach a jury in

---

[31] Plaintiffs cite extensively to this court's opinion in *Cunningham v. Integrated Health Serv., Inc.*, No. 97-1805, 1997 WL 256952 (E.D. Pa. May 15, 1997), analogizing the facts of this case to the interference with familial or business relationships identified in that case.  Neither analogy is appropriate here because the activities alleged in the complaint do not implicate either familial relationships or stem from business reliance to the extent noticed in *Cunningham*.

light of the fully developed evidence.[32]  The court will, thus, presently deny defendants' motion to

dismiss Count V.[33]

### 6.      Negligence

In Count VI of the complaint, plaintiffs allege that defendants are liable for negligence.  To

establish negligence under Pennsylvania law, a plaintiff must prove:  (1) a duty; (2) a breach of that

duty; (3) a causal connection between the defendant's breach and the resulting injury; and (4) injury

to the plaintiff.  *See Estate of Zimmerman v. Se. Pa. Transp. Auth.*, 168 F.3d 680, 684 (3d Cir. 1999);

*T.A. v. Allen*, 699 A.2d 360 (Pa. Super. Ct. 1995).

In their motion to dismiss, defendants argue that they owed no duty to plaintiffs.  In response,

plaintiffs contend that defendants are liable for negligence per se for breach of various statutory

duties and also liable for breach of the general duty imposed on all persons not to place others at a

risk of harm through their actions.  Plaintiffs first argue that Miller, ISA and the Doe defendants are

per se liable for negligence because of their violation of Pennsylvania's Private Detective Act of

1953, 22 Pa. Cons. Stat. § 23(a).  Under Pennsylvania law, negligence per se is

> conduct, whether of action or omission, which may be declared and treated as
> negligence without any argument or proof as to the particular surrounding
> circumstances, either because it is in violation of a statute or valid municipal
> ordinance, or because it is so palpably opposed to the dictates of common prudence
> that it can be said without hesitation or doubt that no careful person would have been
> guilty of it.

---

[32] Furthermore, plaintiffs will be required to present a physician's testimony supporting
an emotional distress claim. Under Pennsylvania law, expert medical evidence must be presented
before a plaintiff can recover for intentional infliction of emotional distress.  *See Bolden v. Se.
Pa. Transp. Auth.*, 21 F.3d 29, 35 (3d Cir.1994) (citing *Kazatsky v. King David Mem'l Park, Inc.*,
527 A.2d 988 (Pa. 1987)).

[33] CMC is again not a proper plaintiff to this Count, as the company cannot suffer
emotional distress.

*White v.  Se. Pa. Transp. Auth.*, 518 A.2d 810, 815 (Pa. Super Ct. 1986).

The Private Detective Act requires all private investigators operating in the state to be licensed and provides that licensed employers of private detectives are "legally responsible for the good conduct in the business of each and every person so employed and shall be responsible for the reasonable supervision of said employe[e]s' conduct." *See* 22 Pa. Cons. Stat. §§ 13(a), 23(a); *see also Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, No. 90-7952, 1992 WL 97826, *10 (E.D. Pa. Apr. 30, 1992).  In this case, the complaint alleges violation of the Private Detective Act against James Miller, ISA and the Doe defendants for conducting private investigative services in Pennsylvania without a license and for negligently conducting their investigation by unlawfully entering the Umars' home, misrepresenting their activities, and threatening Maria, among other alleged acts.  (*E.g.*, Compl. ¶¶ 36, 37, 42 48, 52, 55.)  The allegations sufficiently state a cause of action to survive Miller and ISA's motion to dismiss.

Defendants also owed plaintiffs the general duty to conduct themselves in a reasonable manner so as not to harm plaintiffs.  *See I & S Assocs. Trust. v. LaSalle Nat. Bank*, No. 99-4956, 2000 WL 375264, * 6 (E.D. Pa. Apr. 12, 2000).  Plaintiffs allege that defendants breached that duty, causing harm and injury to plaintiffs.  In the case at bar, the complaint sufficiently alleges that Miller, ISA and the Doe defendants owed a duty to the plaintiffs to conduct their investigation in a reasonable manner and breached that duty through their misconduct, as discussed above, endangering the Umars and causing financial injury and emotional distress.  (Compl. ¶¶ 102-106.)

Plaintiffs, however, have not alleged any facts, aside from the claims discussed in the next section predicated on negligent hiring and supervision, raising Douglas's breach of this general duty.  For example, plaintiffs have not alleged that Douglas negligently directed Miller or ISA or provided

them with dangerous instrumentalities.  *See generally* Restatement (First) of Agency § 213 ("A person conducting an activity through . . . agents is subject to liability: (a) if he is negligent in the conduct of such activity; or (b) if he permits his . . . agents to act negligently upon his premises or with his instrumentalities.").  Accordingly, the court will deny defendants' motion to dismiss plaintiffs' negligence claim under Count VI with regard Miller and ISA, but grant the motion with regard to Douglas.[34]

### 7.      Negligent Hiring and Supervision

In Count VII of the complaint, plaintiffs allege that defendants are liable for negligent hiring and supervision.  Negligent hiring or supervision requires the four elements of negligence outlined in the prior claim, and specifically involves the breach of an employer's duty to abstain from hiring an employee and placing that employee in a situation where the employer knows or should know the employee will harm a third party or the breach of an employer's duty to monitor and control the activities of an employee.  *See Hutchison ex rel. Hutchison v. Luddy*, 742 A.2d 1052, 1059-60 (Pa. 1999) (affirming use of common law and Restatement (Second) of Torts § 317 liability standards for negligent supervision case).  With respect to Miller and ISA, plaintiffs argue in response to defendants' motion to dismiss that Pennsylvania's Private Detective Act creates a legal responsibility for "supervision of . . . employe[e]s' conduct."  22 Pa. Cons. Stat. § 23(a); *see also Advanced Power Sys.*, 1992 WL 97826, at *9.  The allegations of the complaint are sufficient to allege a cause of action under this statute for failure to supervise the employees alleged conducting the investigation

_____

[34] Furthermore, the complaint does not allege any breach of a duty owed to CMC, causation, or injury to CMC.  Therefore, CMC is not a proper plaintiff for this cause of action.

in Pennsylvania, so the court will deny Miller and ISA's motion to dismiss to allow further

development of the record.

Plaintiffs also assert a claim against Douglas for negligent hiring and supervision of Miller

and ISA, citing *Stedman v. Hoogendoorn, Talbot, Davids, Godfrey & Milligan, P.C.*, No. 94-1587,

1995 WL 431385 (7th Cir. July 20, 1995).  *Stedman* is not binding on this court and is of doubtful

persuasive value.[35]  The court will instead look to Pennsylvania law.  Pennsylvania courts hold

individuals liable for the conduct of their agents consistent with Restatement (Second) of Agency

§ 213:

> A person conducting an activity through servants or other agents is subject
> to liability for harm resulting from his conduct if he is negligent or reckless . . . (b)
> in the employment of improper persons or instrumentalities in work involving risk
> of harm to others; or (c) in the supervision of the activity.

*See Heller v. Patwil Homes, Inc.*, 713 A.2d 105, 107 (Pa. Super. Ct. 1998).  In their complaint,

plaintiffs allege that Douglas is liable for negligent hiring because he retained Miller and ISA, who

were unqualified for the job and were unlicensed.  (Compl. ¶ 110.)  Plaintiffs further allege, in

addition to the statutory basis discussed above, that Miller and ISA are similarly liable because of

---

[35] In *Stedman*, the Seventh Circuit reversed the district court's grant of summary
judgment because material facts remained as to whether plaintiff Stedman hired defendant
Tiesenga and his law firm to hire an investigator, Willey, and as to what facts Tiesenga and the
law firm were to report to Stedman.  As the plaintiff was the initiator of the investigation, not its
target, the focus of the case was on contractual liability.  The court of appeals concluded that
either the law firm was responsible to the plaintiff because the investigator was its agent or that
the investigator was directly responsible to the plaintiff because of a third-party beneficiary
status.  1995 WL 431285, at *11.  Thus, depending on the contractual relationship between the
parties, an investigator may be either an agent or an independent contractor.  *Stedman* is not
binding on this court and not applicable here because plaintiffs have not asked the court to
resolve contractual liability, instead general principles of agency apply.

their negligence in hiring the Doe defendants.[36]   (Compl. ¶ 111.)   While the complaint may be lacking in many ways, it sufficiently puts defendants on notice of the factual predicates for each element of the claim—the hiring of Miller, ISA and the Doe defendants, who were all allegedly improper persons to conduct the investigation.[37]   The court will therefore deny the motion to dismiss Count VII.[38]

### 8.   Commercial Disparagement

Count VIII alleges commercial disparagement.   Commercial disparagement requires four elements:  (1) publication of a false statement concerning the business of another; (2) the publisher either intends publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.  *Neurotron Inc. v. Med. Serv. Ass'n of Pa., Inc.*, 254 F.3d 444, 448 (3d Cir. 2001) (citing *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 761 A.2d 553, 555-56 (Pa. Super. Ct. 2000); Restatement (Second) of Torts § 623A).

––––––––––––––––––––

[36] In their motion to dismiss, defendants argue that the complaint "fails to state a cause of action for any improper or unlawful activity, so it follows that there was no negligence."  (Defs. Mot. Dismiss 20.)  This legal conclusion is at odds with the instant holding of the court on Counts I through IV.  Taking the complaint as true, defendants engaged in unlawful and improper activities, including illegal wiretapping.

Defendants also argue that Maria, not Douglas, was responsible for hiring and supervising Miller and ISA.  The court cannot draw this factual conclusion from the complaint and e-mail referenced by the complaint and, in fact, this argument is so contrary to the facts as alleged that is may be disingenuous.

[37] Once again, the complaint does not allege any breach of a duty owed to CMC or injury to CMC resulting therefrom.  Thus, CMC is not a proper plaintiff for this Count.

[38] The court notes that many of defendants' Rule 12(b)(6) objections are clearly frivolous.

Determining the factual basis of the claim based on the allegations of the complaint is extremely difficult. Aside from the conclusory allegations of paragraphs 116 through 122, plaintiffs refer to paragraph 45, wherein they allege that defendants, in an internal email that was forwarded to Maria, "defamatorily referred to Plaintiff Emre Umar, and Plaintiff CMC, as 'to have some political connections, and access to prisoners and money,'" and to paragraph 48, wherein Miller "threatened to interfere with Plaintiffs' business and contracts."[39]   Taking these allegations as true and examining them within their overall context, they are insufficient to state a cause of action in commercial disparagement.

To start, plaintiffs have not alleged publication of these statements to a third party. *See* Restatements (Second) of Torts § 623A ("The statement that contains the injurious falsehood must be published to a third party."). According to the complaint, the email was circulated at ISA and to plaintiff Maria; no third party received it. As a result, defendants could not have known any third party would reasonably rely on it for business dealings with Emre. In addition, the statements themselves—that Emre had access to prisoners and money—do not support the conclusion that defendants have called "into question Plaintiffs' honesty and integrity in their dealings with government entities, businesses and medical and health care professionals," as alleged in paragraph 118, because the overall context of the email clearly evidences that ISA was investigating Emre as a threat to Douglas's physical well-being, not as a person engaging in business misconduct. Thus, the content and context of the email prevent any inference that ISA intended the email to cause a

---

[39] The email states, "Here is the background check on Emre Umar who is threatening our client Mr. Grey [sic] . . . . There is a lot of interesting information in this file, but the most pertinant [sic] to our case is that this man seems to have some political connections, and access to prisoners and money." (Defs.' Mot. Dismiss Ex. B-1, at 2.) As noted above, the email does not refer to CMC.

pecuniary loss or that it should have reasonably recognized that the publication would cause such a loss. *See* Restatement (Second) of Torts § 623A cmt. b ("The publisher must . . . as a reasonable man recognize the likelihood that some third person will act in reliance upon his statement, or that it will otherwise cause harm to the pecuniary interests of the other because of the reliance. . . . Thus the publisher is not liable if he has no reason to anticipate that the publication of his statement will in any way affect the conduct of any third person; and this is true although the publisher knows that the matter that he asserts is false.").

Furthermore, plaintiffs have not alleged with any plausibility that pecuniary loss resulted from the email. They have provided no factual allegations of causation and no factual allegations of particular customers or contracts lost because of this email. *See Testing Sys., Inc. v. Magnaflux Corp.*, 251 F. Supp. 286, 290 (E.D. Pa. 1966) (holding that Pennsylvania courts require a plaintiff claiming commercial disparagement to plead damages with considerable specificity); *Zerpol Corp. v. DMP Corp.*, 561 F. Supp. 404, 409 (E.D. Pa. 1983) (holding that the plaintiff "must in his complaint set out the names of his lost customers and show by figures how much he has lost financially").[40]

The court finds that plaintiffs' limited factual allegations fail to support the elements of commercial disparagement. The court will grant defendants' motion to dismiss Count VIII for failure to state a claim upon which relief may be granted and will dismiss Count VIII with prejudice.

---

[40] In their response to defendants' motion to dismiss, plaintiffs attempt to restate their claim as one for defamation. Even applying the defamation requirements, which do not require pleadings of actual pecuniary loss, this cause of action fails because there was no publication of false statements to a third party. *See* Restatement (Second) of Torts § 623A ("The action for [commercial disparagement] is obviously similar in many respects to the action for defamation. Both involve the imposition of liability for injuries sustained through publication *to third parties* of a false statement affecting the plaintiff." (emphasis added)).

### 9.    Civil Conspiracy

Lastly, Count IX alleges civil conspiracy.   To state a claim for civil conspiracy under Pennsylvania law, a plaintiff must allege:

> (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.

*Kline*, 386 F.3d at 262.   Although state law forms the substantive basis of the claim, "[t]he sufficiency of a claim for civil conspiracy under state law, brought in federal court, is governed by the Federal Rules of Civil Procedure."   *Adams v. Teamsters Local 115*, 214 F. App'x 167, 176 (3d Cir. 2007); *Simmons v. City of Phila.*, 947 F.2d 1042, 1085 (3d Cir. 1991).   Specifically, Rule 8, which governs allegations of conspiracy, provides that "conclusory allegations of 'concerted action,' without allegations of fact that reflect joint action, are insufficient to meet this requirement."   *Adams*, 214 F. App'x at 176.   The complaint must allege "at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn."   *Id.*   "This requirement is established where the complaint sets forth a valid legal theory and it adequately states the conduct, time, place, and persons responsible."   *Id.*

Defendants argue that the complaint fails to meet minimum pleading standards.   The complaint alleges numerous acts by Douglas, Miller, ISA or their agents in their effort to investigate the Umars.   (*See* Compl. ¶¶ 52-60).   While the complaint identifies multiple alleged members of a conspiracy, it contains nothing more than conclusory allegations regarding the presence of a conspiracy, or the time or place of its conduct.   (*See* Compl. ¶¶ 123-35.)   The complaint simply alleges no factual underpinnings of an agreement to do an unlawful act or to do a lawful act by

unlawful means or for an unlawful purpose.  The court will thus dismiss Count IX without prejudice and grant plaintiff leave to amend the complaint consistent with this memorandum.[41]

### 10.    Plaintiff CMC

Defendants have argued that CMC is not a proper plaintiff for many of the counts alleged against the defendants.  The court has reviewed the claims and,  based on the allegations before it, concludes that CMC is not a proper plaintiff in this case.  Other than an inaccurate claim that CMC was mentioned in the e-mail chain sent to Maria, *see supra* note 4 and surrounding text, CMC was only referenced one time in the complaint's recitation of facts, and that reference was the vaguely worded statement by Douglas to Maria that Karen had "found the company" (Compl. ¶ 23).  The court will therefore dismiss CMC as a party.  *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

### E.    Defendants' Motion to Strike Paragraphs Twelve and Thirteen of the Complaint Under Rule 12(f)

Defendants move to strike paragraphs twelve and thirteen of the complaint under Rule 12(f) of the Federal Rules of Civil Procedure.[42]  Motions to strike are generally disfavored if used as a

----

[41] Although the court will dismiss this Count, the court also concludes that CMC is not a proper plaintiff for this conspiracy claim because the alleged conspiratorial acts were not directed against it.

[42] Rule 12(f) states:

> Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading.

dilatory tactic, *see* Wright & Miller, Federal Practice & Procedure:  Civil 2d § 1380, 6476-49, or as

an attempt to summarily dismiss some question, of either law or fact, which the court ought to hear

and determine, *see Burke v. Mesta Mach. Co.*, 5 F.R.D. 134, 138-39 (W.D. Pa. 1946).  But, motions

to strike are the proper means to eliminate matters in the pleadings that are "redundant, immaterial,

impertinent, or scandalous."  *Great West Life Assur. Co. v. Levithan*, 834 F. Supp. 858, 865 (E.D.

Pa. 1993) (citing Fed. R. Civ. P. 12(f)).  The court will grant the motion because paragraphs twelve

and thirteen relate to Douglas's professional career and are in no way material or pertinent to

plaintiffs' claims;[43] furthermore, the motion does not appear to be a dilatory tactic or designed to

prevent the court's review of a question of fact or law that it ought to consider.


### III.  Conclusion

First, although the court currently lacks diversity jurisdiction, it has federal question subject

matter jurisdiction over Count III, the federal claim arising under the ECPA.  It has supplemental

jurisdiction over the state law claims alleged in the remaining counts because they arise out of a

common nucleus of operative facts and ought to be tried in one proceeding.  The court will,

therefore, deny defendants' motion to dismiss pursuant to Rule 12(b)(1).

Second, the court may lack personal jurisdiction over Karen Gray because she does not have

minimum contacts with the forum state of Pennsylvania and because the complaint, supporting

affidavits, and evidence of her involvement in intentional torts directed at Pennsylvania fail to

provide the court with jurisdiction under the *Calder* effects test.  The court will, however, allow

plaintiffs to conduct jurisdictional discovery for 45 days before issuing a dispositive ruling.

---

[43] Plaintiffs' motivation for including these allegations is, at best, unclear.

Third, the court will grant in part and deny in part defendants' Rule 12(b)(6) motion to dismiss for failure to state claims for which relief may be granted. The court will grant the motion with prejudice as to Count VIII because the complaint fails to allege any plausible basis for a claim of commercial disparagement. The court will grant the motion as to Count IX without prejudice, allowing plaintiffs leave to amended their complaint to allege the missing elements of the conspiracy claim. The court will also grant defendants' motion as to Count VI to the extent that negligence is alleged against Douglas and dismiss that claim against Douglas without prejudice. The court will additionally dismiss CMC as a plaintiff in this action, as it is not a proper plaintiff for any of the claims. Finally, the court will deny the Rule 12(b)(6) motion with respect to the remaining counts and parties.[44]

Fourth, the court will deny defendants' motion to strike the complaint pursuant to Rule 8(a)(2), but will grant defendants' motion to strike paragraphs 12 and 13 of the complaint under Rule 12(f).

---

[44] The court again notes that it will not issue any ruling regarding Karen's Rule 12(b)(6) motions until the court concludes that it has personal jurisdiction over her. If the court later concludes it has jurisdiction over her, it will amend this memorandum and order or issue a new memorandum and order as appropriate, upon request by Karen.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CORRECTIONAL MEDICAL CARE, INC. | : | |
| et al., | : | CIVIL ACTION |
|    Plaintiffs, | : | |
| | : | NO. 07-2840 |
|     v. | : | |
| | : | |
| GRAY, et al., | : | |
|    Defendants. | : | |

## Order

YOHN, J.

**AND NOW** on this _____ day of January 2008, upon consideration of defendants' motion to dismiss and to strike (Docket Nos. 9 & 16), plaintiffs' responses thereto, and defendants' replies and sur-reply thereto, **IT IS HEREBY ORDERED** that:

1.  Defendants' motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is DENIED.

2.  Defendant Karen Gray's motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction is DENIED.  Plaintiffs are GRANTED leave to conduct specific discovery related to the court's personal jurisdiction over Karen Gray within 45 days from the date of this Order.  Defendant Karen Gray is GRANTED leave to refile her motion to dismiss pursuant to Rule 12(b)(2), if appropriate, after jurisdictional discovery is conducted.

3.  Defendant Karen Gray's motions to dismiss pursuant to Rule 12(b)(6) are DISMISSED AS MOOT.  Karen Gray is GRANTED leave to refile her motions to dismiss pursuant to Rule 12(b)(6), if appropriate, after jurisdictional discovery is conducted.

4.   Defendants' James Miller, Investigative Services Agency, Inc., and J. Douglas Gray's motions to dismiss pursuant to Rule 12(b)(6) are GRANTED as to Counts VIII and IX of the complaint.  Count VIII is DISMISSED with prejudice.  Count IX is DISMISSED without prejudice.  In addition, defendant J. Douglas Gray's motion to dismiss Count VI is GRANTED, and Count VI as alleged against him is DISMISSED without prejudice.  Plaintiffs will have twenty (20) days from the date of this Order to file an amended complaint if they so choose.  Defendants' motion to dismiss pursuant to Rule 12(b)(6) is DENIED as to Counts I through V, Count VI against Defendants Miller and ISA, and Count VII.

5.   Plaintiff Correctional Medical Care is DISMISSED as a party to this lawsuit with prejudice.

6.   Defendants' motion to strike the entire complaint pursuant to Rule 8(a)(2) for failure to allege a short and plain statement of the claim is DENIED.

7.   Defendants' motion to strike paragraphs twelve (12) and thirteen (13) of the complaint pursuant to Rule 12(f) is GRANTED.  Paragraphs twelve (12) and thirteen (13) are STRICKEN.

8.   Plaintiffs have sixty (60) days to identify and serve the Doe defendants.


                                        s/ William H. Yohn Jr.
                                        William H. Yohn Jr., Judge